BROCKETT *v.* SPOKANE ARCADES, INC., ET AL.

No. 84–28.  Argued February 20, 1985—Decided June 19, 1985*

---

*Together with No. 84–143, *Eikenberry, Attorney General of Washington, et al.* v. *J–R Distributors, Inc., et al.*, also on appeal from the same court.

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. O'CONNOR, J., filed a concurring opinion, in which BURGER, C. J., and REHNQUIST, J., joined, *post*, p. 507. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 510. POWELL, J., took no part in the decision of the cases.

*Christine O. Gregoire,* Deputy Attorney General of Washington, argued the cause for appellants in both cases. With her on the briefs were *Kenneth O. Eikenberry,* Attorney General, *pro se, Jeffrey C. Sullivan,* and *Richard C. Robinson. David A. Saraceno* filed a brief for appellant in No. 84–28.

*John H. Weston* argued the cause for appellees in both cases. With him on the brief were *David M. Brown, G. Randall Garrou, Jack Burns, James H. Lowe, Robert Eugene Smith,* and *Charles Stixrud.*†

---

†Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Lee, Assistant Attorney General Trott,* and *William C. Bryson;* for the State of Arizona et al. by *Robert K. Corbin,* Attorney General of Arizona, *Anthony B. Ching,* Solicitor General, and *Linley E. Pearson,* Attorney General of Indiana; for Tom Collins, as County Attorney for the County of Maricopa, Arizona, by *Bruce A. Taylor* and *Sandor O. Shuch;* for Lawrence J. Warren, as City Attorney for the City of Renton, Washington, by *James J. Clancy, Lawrence J. Warren, pro se,* and *Daniel Kellogg;* for Citizens for Decency Through Law, Inc., et al. by *Paul C. McCommon III;* for Concerned Women for America Education and Legal Defense Foundation by *Michael P. Farris;* and for Morality in Media, Inc., by *John J. Walsh.*

JUSTICE WHITE delivered the opinion of the Court.

The question in these cases is whether the Court of Appeals for the Ninth Circuit erred in invalidating in its entirety a Washington statute aimed at preventing and punishing the publication of obscene materials.

## I

On April 1, 1982, the Washington state moral nuisance law became effective.   Wash. Rev. Code §§ 7.48A.010–7.48A.900 (1983).[1]   It sets forth a comprehensive scheme establishing criminal and civil penalties for those who deal in obscenity or prostitution.   The statute declares to be a "moral nuisance" any place "where lewd films are publicly exhibited as a regular course of business" and any place of business "in which lewd publications constitute a principal part of the stock in trade."   §§ 7.48A.020(1), (3).   Subsection (2) of the "Definitions" section of the statute provides that "lewd matter" is synonymous with "obscene matter," and defines these terms to mean any matter:

"(a) Which the average person, applying contemporary community standards, would find, when considered as a whole, appeals to the prurient interest; and

"(b) Which explicitly depicts or describes patently offensive representations or descriptions of:

"(i) Ultimate sexual acts, normal or perverted, actual or simulated; or

"(ii) Masturbation, fellatio, cunnilingus, bestiality, excretory functions, or lewd exhibition of the genitals or genital area; or

---

Briefs of *amici curiae* were filed for Mississippi Citizens for Decency Through Law by *Jacqueline Smith Pierce;* and for the American Booksellers Association, Inc., et al. by *Michael A. Bamberger.*

[1] An earlier moral nuisance law, Wash. Rev. Code § 7.48.052 *et seq.* (1983), adopted as an initiative measure in 1977, was struck down as an impermissible prior restraint.   See *Spokane Arcades, Inc.* v. *Brockett,* 631 F. 2d 135 (CA9 1980), summarily aff'd, 454 U. S. 1022 (1981).

"(iii) Violent or destructive sexual acts, including but not limited to human or animal mutilation, dismemberment, rape or torture; and

"(c) Which, when considered as a whole, and in the context in which it is used, lacks serious literary, artistic, political, or scientific value." § 7.48A.010(2).

The word "prurient," as used in subsection (2)(a), is defined in subsection (8) to mean "that which incites lasciviousness or lust." § 7.48A.010(8).

On April 5, four days after the effective date of the statute, appellees—various individuals and corporations who purvey sexually oriented books and movies to the adult public[2]—challenged the constitutionality of the statute in Federal District Court, seeking injunctive and declaratory relief. One of their assertions was that the statute's definition of "prurient" to include "that which incites . . . lust" was unconstitutionally overbroad because it reached material that aroused only a normal, healthy interest in sex and that the statute was therefore to be declared invalid on its face.[3] Appellees alleged that the sexually oriented films and books they sold were protected by the First Amendment, and that the state authorities would enforce the new legislation against them unless restrained by the Court. App. 33. On April 13, the District Court for the Eastern District of Washington issued a preliminary injunction against enforcement of the statute. *Id.*, at 35.

After trial, the District Court rejected all of appellees' constitutional challenges to the validity of the statute. 544 F.

---

[2] Seven separate suits were originally filed in the District Court for the Eastern District of Washington, where they were consolidated.

[3] Appellees also challenged the Washington statute's paraphrasing of the second and third parts of the test set forth in *Miller* v. *California,* 413 U. S. 15 (1973). See *infra,* at 497. The District Court rejected these attacks, and the Court of Appeals did not address them. Appellees have not renewed these claims in this Court.

Supp. 1034 (1982).[4] A divided panel of the Court of Appeals for the Ninth Circuit reversed. 725 F. 2d 482 (1984). It first held that a facial challenge to the allegedly overbroad statute was appropriate despite the fact that the law had not yet been authoritatively interpreted or enforced. This was necessary when First Amendment rights were at stake lest the very existence of the statute have a chilling effect on protected expression. The Court of Appeals acknowledged that facial invalidation required "substantial overbreadth," *Broadrick* v. *Oklahoma,* 413 U. S. 601 (1973), but concluded that the requirement applies only when the challenged statute regulates conduct, as opposed to "pure speech." 725 F. 2d, at 487. Nor did the court find this to be an appropriate case for abstention. See *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496 (1941).

Reaching the merits, the Court of Appeals held that by including "lust" in its definition of "prurient," the Washington state legislature had intended the statute to reach material that merely stimulated normal sexual responses, material that it considered to be constitutionally protected. Because in its view the statute did not lend itself to a saving construction by a state court and any application of the statute would depend on a determination of obscenity by reference to the "unconstitutionally overbroad" definition, the Court of Appeals declared the statute as a whole to be null and void.[5]

---

[4] The District Court stayed its judgment to allow appellees to seek a stay pending appeal from the Court of Appeals, which the Court of Appeals subsequently granted. 725 F. 2d 482, 485 (1984). Thus, the statute was not enforced pending appeal.

[5] Having struck down the statute *in toto* on overbreadth grounds, the Court of Appeals nevertheless went on to conclude that the statute's civil fine provisions were constitutionally invalid, on the theory that "the legislature will undoubtedly try again." 725 F. 2d, at 493. This part of the opinion was obviously unnecessary to the Court of Appeals' holding, and in view of our disposition of this case, will require reconsideration on remand.

The defendant state and county officials separately appealed to this Court. We noted probable jurisdiction in both cases, 469 U. S. 813 (1984).[6]

## II

The Court of Appeals was of the view that neither *Roth* v. *United States*, 354 U. S. 476 (1957), nor later cases should be read to include within the definition of obscenity those materials that appeal to only normal sexual appetites. *Roth* held that the protection of the First Amendment did not extend to obscene speech, which was to be identified by inquiring "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." *Id.*, at 489 (footnote omitted). Earlier in its opinion, *id.*, at 487, n. 20, the Court had defined "material which deals with sex in a manner appealing to prurient interest" as:

> "*I. e.*, material having a tendency to excite lustful thoughts. Webster's New International Dictionary (Unabridged, 2d ed., 1949) defines *prurient*, in pertinent part, as follows:
>
> "'. . . Itching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd. . . .'
>
> "*Pruriency* is defined, in pertinent part, as follows:
>
> "'. . . Quality of being prurient; lascivious desire or thought. . . .'
>
> "See also *Mutual Film Corp.* v. *Industrial Comm'n*, 236 U. S. 230, 242, where this Court said as to motion pictures: '. . . They take their attraction from the general interest, eager and wholesome it may be, in their subjects, but a *prurient interest may be excited and appealed to*. . . .' (Emphasis added.)

---

[6] Because there are no significant differences between the two cases, we do not distinguish between them in our discussion.

"We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A. L. I., Model Penal Code, § 207.10(2) (Tent. Draft No. 6, 1957), *viz.*:

" '. . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . .' See Comment, *id.*, at 10, and the discussion at page 29 *et seq.*"

Under *Roth,* obscenity was equated with prurience and was not entitled to First Amendment protection. Nine years later, however, the decision in *Memoirs* v. *Massachusetts,* 383 U. S. 413 (1966), established a much more demanding three-part definition of obscenity, a definition that was in turn modified in *Miller* v. *California,* 413 U. S. 15 (1973).[7] The *Miller* guidelines for identifying obscenity are:

"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois* v. *Wisconsin,* [408 U. S.,] at 230, quoting *Roth* v. *United States, supra,* at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.,* at 24.

*Miller* thus retained, as had *Memoirs,* the *Roth* formulation as the first part of this test, without elaborating on or dis-

---

[7] The basic difference between the *Memoirs* test and the *Miller* test was the *Memoirs* requirement that in order to be judged obscene, a work must be "utterly without redeeming social value." 383 U. S., at 418. *Miller* settled on the formulation, "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U. S., at 24.

agreeing with the definition of "prurient interest" contained in the *Roth* opinion.

The Court of Appeals was aware that *Roth* had indicated in footnote 20 that material appealing to the prurient interest was "material having a tendency to excite lustful thoughts" but did not believe that *Roth* had intended to characterize as obscene material that provoked only normal, healthy sexual desires. We do not differ with that view. As already noted, material appealing to the "prurient interest" was itself the definition of obscenity announced in *Roth;* and we are quite sure that by using the words "lustful thoughts" in footnote 20, the Court was referring to sexual responses over and beyond those that would be characterized as normal. At the end of that footnote, as the Court of Appeals observed, the *Roth* opinion referred to the Model Penal Code definition of obscenity—material whose predominate appeal is to "a shameful or morbid interest in nudity, sex, or excretion" and indicated that it perceived no significant difference between that definition and the meaning of obscenity developed in the case law. This effectively negated any inference that "lustful thoughts" as used earlier in the footnote was limited to or included normal sexual responses.[8] It would require more

---

[8] This conclusion is bolstered by a subsequent footnote, 354 U. S., at 489, n. 26, referring to a number of cases defining obscenity in terms of "lust" or "lustful." See *Parmelee* v. *United States,* 72 App. D. C. 203, 210, 113 F. 2d 729, 736 (1940) (material is protected if "the erotic matter is not introduced to promote lust"); *United States* v. *Dennett,* 39 F. 2d 564, 569 (CA2 1930) (sex education pamphlet not obscene because tendency is to "rationalize and dignify [sex] emotions rather than to arouse lust"); *United States* v. *One Book Called "Ulysses,"* 5 F. Supp. 182, 184 (SDNY 1933), aff'd, 72 F. 2d 705 (CA2 1934) (meaning of the word "obscene" is "[t]ending to stir the sex impulses or to lead to sexually impure and lustful thoughts"); *Commonwealth* v. *Isenstadt,* 318 Mass. 543, 549–550, 62 N. E. 2d 840, 844 (1945) (material is obscene if it has "a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desire"); *Missouri* v. *Becker,* 364 Mo. 1079, 1085, 272 S. W. 2d 283, 286 (1954) (materials are obscene if they "incite lascivious thoughts, arouse lustful desire"); *Adams Theatre Co.* v. *Keenan,* 12 N. J. 267, 272, 96 A. 2d 519, 521

than the possible ambiguity in footnote 20 to lead us to believe that the Court intended to characterize as obscene and exclude from the protection of the First Amendment any and all speech that aroused any sexual responses, whether normal or morbid.

Appellants urge that because *Roth* defined prurience in terms of lust, the Washington obscenity statute cannot be faulted for defining "prurient" as that which "incites lasciviousness or lust." Whatever *Roth* meant by "lustful thoughts"—and the State agrees that the Court did not intend to include materials that provoked only normal sexual reactions—that meaning should be attributed to the term "lust" appearing in the state law. On this basis, the State submits that the statute cannot be unconstitutional for defining prurience in this manner.

The Court of Appeals rejected this view, holding that the term "lust" had acquired a far broader meaning since *Roth* was decided in 1957. The word had come to be understood as referring to a "healthy, wholesome, human reaction common to millions of well-adjusted persons in our society," rather than to any shameful or morbid desire. 725 F. 2d, at 490. Construed in this way, the statutory definition of prurience would include within the first part of the *Miller* definition of obscenity material that is constitutionally protected by the First Amendment: material that, taken as a whole, does no more than arouse, "good, old fashioned, healthy" interest in sex. *Id.*, at 492. The statute, the Court of Appeals held, was thus overbroad and invalid on its face.

Appellants fault the Court of Appeals for construing the statute in this manner. Normally, however we defer to the construction of a state statute given it by the lower federal courts. *Chardon* v. *Fumero Soto*, 462 U. S. 650, 654–655, n. 5 (1983); *Haring* v. *Prosise*, 462 U. S. 306, 314, n. 8 (1983); *Pierson* v. *Ray*, 386 U. S. 547, 558, n. 12 (1967); *General Box*

(1953) (BRENNAN, J.) (question is whether "dominant note of the presentation is erotic allurement 'tending to excite lustful and lecherous desire' ").

*Co.* v. *United States,* 351 U. S. 159, 165 (1956). We do so not only to "render unnecessary review of their decisions in this respect," *Cort* v. *Ash,* 422 U. S. 66, 73, n. 6 (1975), but also to reflect our belief that district courts and courts of appeals are better schooled in and more able to interpret the laws of their respective States. See *Bishop* v. *Wood,* 426 U. S. 341, 345–346 (1976); *Gooding* v. *Wilson,* 405 U. S. 518, 524, and n. 2 (1972). The rule is not ironclad, however, and we surely have the authority to differ with the lower federal courts as to the meaning of a state statute.[9] It may also be that, other things being equal, this would not be a case for deferring to the Court of Appeals.[10] But we pretermit this

---

[9] The Court has stated that it will defer to lower courts on state-law issues unless there is "plain" error, *Palmer* v. *Hoffman,* 318 U. S. 109, 118 (1943); the view of the lower court is "clearly wrong," *The Tungus* v. *Skovgaard,* 358 U. S. 588, 596 (1959); or the construction is "clearly erroneous," *United States* v. *Durham Lumber Co.,* 363 U. S. 522, 527 (1960), or "unreasonable," *Propper* v. *Clark,* 337 U. S. 472, 486–487 (1949). On occasion, then, the Court has refused to follow the views of a lower federal court on an issue of state law. In *Cole* v. *Richardson,* 405 U. S. 676, 683–684 (1972), *e. g.,* we refused to accept a three-judge District Court's construction of a single statutory word based on the dictionary definition of that language where more reliable indicia of the legislative intent were available.

[10] Appellants make a strong argument that the Court of Appeals erred in construing the Washington statute. The Court of Appeals relied on dictionary definitions of "prurient" and "lust," saying that the most recent edition of Webster's Third New International Dictionary (Unabridged, 4th ed. 1976) did not include the word "lust" in its definition of "prurient." But neither did the edition of Webster cited by the *Roth* court. Webster's Second Edition defined "lust" as (excluding the obsolete meanings):

"sensuous desire; bodily appetite; specif. and most commonly, sexual desire, as a violent or degrading passion." Webster's New International Dictionary (Unabridged, 2d ed., 1949).

Furthermore, and of some significance, the word "lust" is defined in Webster's Third New International (Unabridged, 5th ed., 1981) in pertinent part as follows:

"1 *obs.* a: PLEASURE, GRATIFICATION, DELIGHT . . . b: personal inclination: WISH, WHIM . . . c: VIGOR, FERTILITY . . . 2: sexual de-

issue, for the Court of Appeals fell into another error when it invalidated the statute on its face because of its "unconstitutionally overbroad" definition of obscenity.

## III

Appellants insist that the error was in finding any invalidity in the statute, even accepting the court's construction of the word "lust." To be obscene under *Miller*, a publication must, taken as a whole, appeal to the prurient interest, must contain patently offensive depictions or descriptions of specified sexual conduct, and on the whole have no serious literary, artistic, political, or scientific value. Appellants submit that the latter two *Miller* guidelines, which the Washington statute faithfully follows, will completely cure any overbreadth that may inhere in the statute's definition of prurience as construed by the Court of Appeals. We are not at all confident that this would always be the case. It could be that a publication that on the whole arouses normal sexual responses would be declared obscene because it contains an isolated example of conduct required by the second guideline and because it also fails to have the redeeming value required by the third. Under the existing case law, material of that kind is not without constitutional protection.[11]

Facial invalidation of the statute was nevertheless improvident. We call to mind two of the cardinal rules governing the federal courts: " '[o]ne, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " *United States* v. *Raines*, 362 U. S. 17, 21

sire esp. of a violent self-indulgent character: LECHERY, LASCIVIOUSNESS . . . 3 a: an intense longing: CRAVING . . . b: EAGERNESS, ENTHUSIASM."

[11] *Roth* specifically rejected a standard of obscenity that "allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons." 354 U. S., at 488–489 (discussing *Queen* v. *Hicklin*, [1868] L. R. 3 Q. B. 360).

(1960), quoting *Liverpool, New York & Philadelphia S. S. Co.* v. *Commissioners of Emigration*, 113 U. S. 33, 39 (1885). Citing a long line of cases, *Raines* also held that "[k]indred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." These guideposts are at the bottom of the "elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected." *Allen* v. *Louisiana*, 103 U. S. 80, 83–84 (1881), quoted with approval in *Field* v. *Clark*, 143 U. S. 649, 695–696 (1892). Absent "weighty countervailing" circumstances, *Raines, supra,* at 22, this is the course that the Court has adhered to. *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 395–396 (1894); *Champlin Refining Co.* v. *Corporation Comm'n*, 286 U. S. 210, 234–235 (1932); *Watson* v. *Buck*, 313 U. S. 387, 395–396 (1941); *Buckley* v. *Valeo*, 424 U. S. 1, 108 (1976). Just this Term, in *Tennessee* v. *Garner*, 471 U. S. 1 (1985), we held unconstitutional a state statute authorizing the use of deadly force against fleeing suspects, not on its face, but only insofar as it authorized the use of lethal force against unarmed and nondangerous suspects.

Nor does the First Amendment involvement in this case render inapplicable the rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it. *Buckley* v. *Valeo, supra,* illustrates as much. So does *Cantwell* v. *Connecticut,* 310 U. S. 296 (1940), where the Court did not invalidate the state offense of "breach of the peace" on its face but only to the extent that it was construed and applied to prevent the peaceful distribution of religious literature on the streets. In *Marsh* v. *Alabama*, 326 U. S. 501 (1946), the Court struck

down a state trespass law only "[i]nsofar as the State has attempted to impose criminal punishment" on those distributing literature on the streets of a company town. *Id.*, at 509. *NAACP* v. *Button*, 371 U. S. 415 (1963), did not facially invalidate the State's rules against solicitation by attorneys but only as they were sought to be applied to the activities of the NAACP involved in that case. *Id.*, at 419, 439. More recently, in *United States* v. *Grace*, 461 U. S. 171 (1983), we declined to invalidate on its face a federal statute prohibiting demonstrations on the Supreme Court grounds and confined our holding to the invalidity of the statute as applied to picketing on the public sidewalks surrounding the building. *Id.*, at 175.

For its holding that in First Amendment cases an overbroad statute must be stricken down on its face, the Court of Appeals relied on that line of cases exemplified by *Thornhill* v. *Alabama*, 310 U. S. 88 (1940), and more recently by *Village of Schaumburg* v. *Citizens for a Better Environment*, 444 U. S. 620 (1980). In those cases, an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid. If the overbreadth is "substantial,"[12] the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by

---

[12] The Court of Appeals erred in holding that the *Broadrick* v. *Oklahoma*, 413 U. S. 601 (1973), substantial overbreadth requirement is inapplicable where pure speech rather than conduct is at issue. *New York* v. *Ferber*, 458 U. S. 747, 772 (1982), specifically held to the contrary. Because of our disposition of these cases, we do not address the issue whether the overbreadth of the Washington statute, in relation to its legitimate reach, is substantial and warrants a declaration of facial invalidity. See *Secretary of State of Maryland* v. *Joseph H. Munson Co.*, 467 U. S. 947, 964–965 (1984); *CSC* v. *Letter Carriers*, 413 U. S. 548, 580–581 (1973).

legislative action or by judicial construction or partial invalidation. *Broadrick* v. *Oklahoma*, 413 U. S. 601 (1973).

It is otherwise where the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish, or who seek to publish both protected and unprotected material. There is then no want of a proper party to challenge the statute, no concern that an attack on the statute will be unduly delayed or protected speech discouraged. The statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact.

The cases before us are ones governed by the normal rule that partial, rather than facial, invalidation is the required course. The Washington statute was faulted by the Court of Appeals only because it reached material that incited normal as well as unhealthy interest in sex, and appellees, or some of them, desiring to publish this sort of material, claimed that they faced punishment if they did so. Unless there are countervailing considerations, the Washington law should have been invalidated only insofar as the word "lust" is to be understood as reaching protected materials.

The Court of Appeals was of the view that the term "lust" did not lend itself to a limiting construction and that it would not be feasible to separate its valid and invalid applications. Even accepting the Court of Appeals' construction of "lust," however, we are unconvinced that the identified overbreadth is incurable and would taint all possible applications of the statute, as was the case in *Secretary of State of Maryland* v. *Joseph H. Munson Co.*, 467 U. S. 947 (1984). See also *City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U. S. 789, 796–799, and nn. 12–16 (1984). If, as we have held, prurience may be constitutionally defined for the purposes of identifying obscenity as that which appeals to a shameful or morbid interest in sex, *Roth* v. *United States*, 354 U. S. 476 (1957), it is equally certain that if the statute at issue here is invalidated only insofar as the word "lust" is taken to include

normal interest in sex, the statute would pass constitutional muster and would validly reach the whole range of obscene publications. Furthermore, had the Court of Appeals thought that "lust" refers *only* to normal sexual appetites, it could have excised the word from the statute entirely, since the statutory definition of prurience referred to "lasciviousness" as well as "lust." Even if the statute had not defined prurience at all, there would have been no satisfactory ground for striking the statute down in its entirety because of invalidity in all of its applications.[18]

---

[18] According to appellees, the vast majority of state statutes either leave the word "prurient" undefined or adopt a definition using the words "shameful or morbid." Brief for Appellees 26–27. One State, New Hampshire, defines prurient interest as "an interest in lewdness or lascivious thoughts." N. H. Rev. Stat. Ann. §§ 650:(1)(I)–(IV)(a) (Supp. 1983). Mississippi is apparently the only State other than Washington to use the word "lust" in its definition of "prurient." Miss. Code Ann. § 97–29–103(1)(a) (Supp. 1984) ("a lustful, erotic, shameful, or morbid interest in nudity, sex or excretion"). The District Court for the Northern District of Mississippi has issued a preliminary injunction against enforcement of the statute, partly on the ground that "[t]he inclusion of the terms lustful and erotic [in the definition of prurient] would permit the application of the statute to arguably protected materials." *Goldstein* v. *Allain,* 568 F. Supp. 1377, 1385 (1983), appeal stayed pending trial on the merits, Case No. 83–4452 (CA5, June 20, 1984).

Some lower courts considering the issue have used the words "shameful or morbid" in describing the "prurient interest" that distinguishes obscene materials. See, *e. g., Red Bluff Drive-In, Inc.* v. *Vance,* 648 F. 2d 1020, 1026 (CA5 1981), cert. denied *sub nom. Theatres West, Inc.* v. *Holmes,* 455 U. S. 913 (1982); *Leach* v. *American Booksellers Assn., Inc.,* 582 S. W. 2d 738, 749–750 (Tenn. 1979). Others, however, have used "lust" in connection with definitions of "prurient," reading the word as connoting a sense of shame or debasement, or relying on its use in *Roth.* See, *e. g., United States* v. *35 MM. Motion Picture Film Entitled "Language of Love,"* 432 F. 2d 705, 711–712 (CA2 1970); *Childs* v. *Oregon,* 431 F. 2d 272, 275 (CA9 1970); *Flying Eagle Publications, Inc.* v. *United States,* 273 F. 2d 799, 803 (CA1 1960).

An obscenity statute that leaves the word "prurient" undefined, or rather, defined only by case law has been sustained. See *Red Bluff Drive-In, Inc.* v. *Vance, supra,* at 1026. See also *Ward* v. *Illinois,* 431

Partial invalidation would be improper if it were contrary to legislative intent in the sense that the legislature had passed an inseverable Act or would not have passed it had it known the challenged provision was invalid. But here the statute itself contains a severability clause;[14] and under Washington law, a statute is not to be declared unconstitutional in its entirety unless "the invalid provisons are unseverable and it cannot reasonably be believed that the legislature would have passed the one without the other, or unless the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purposes." *State* v. *Anderson*, 81 Wash. 2d 234, 236, 501 P. 2d 184, 185–186 (1972).[15] It would be frivolous to suggest, and

---

U. S. 767, 775 (1977) (state obscenity statute not overbroad for failure to expressly describe the kinds of sexual conduct intended to be referred to under part (b) of *Miller* guidelines, where state court had construed statute to incorporate the examples of sexual conduct mentioned in *Miller*). A predecessor of the Washington statute at issue here similarly used the word "prurient" without defining it. Wash. Rev. Code § 7.48.050 *et seq.* (1983). The Court of Appeals for the Ninth Circuit struck down the statute on other grounds, but apparently the use of the word "prurient" was not challenged. See *Spokane Arcades* v. *Brockett*, 631 F. 2d, at 136, n. 1. An earlier predecessor statute used only the word "obscene," without any further definition whatsoever. The Washington Supreme Court construed the statute to incorporate the *Roth-Miller* test, saving it from unconstitutional vagueness. See *State* v. *J–R Distributors, Inc.*, 82 Wash. 2d 584, 602–603, 512 P. 2d 1049, 1061 (1973). The evident likelihood that the Washington courts would construe the instant statute to conform with the *Miller* standards also counsels against facial invalidation in this case. Cf. *Time, Inc.* v. *Hill*, 385 U. S. 374 (1967).

[14] "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected." Wash. Rev. Code § 7.48A.900 (1983).

[15] This standard is similar to that which we would apply in determining the severability of a federal statute: " 'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what

no one does, that the Washington Legislature, if it could not proscribe materials that appealed to normal as well as abnormal sexual appetites, would have refrained from passing the moral nuisance statute. And it is quite evident that the remainder of the statute retains its effectiveness as a regulation of obscenity. In these circumstances, the issue of severability is no obstacle to partial invalidation, which is the course the Court of Appeals should have pursued.

The judgment of the Court of Appeals is accordingly reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE POWELL took no part in the decision of these cases.

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE and JUSTICE REHNQUIST join, concurring.

Only days after the State of Washington adopted the moral nuisance law at issue here, appellees launched a constitutional attack in Federal District Court. Although the statute has never been enforced or authoritatively interpreted by a state court, appellees allege that it applies to constitutionally protected expression and is facially invalid. Because I believe that the federal courts should have abstained and allowed the Washington courts an opportunity to construe the state law in the first instance, I think the proper disposition of these cases would be to vacate the judgment of the Court of Appeals on that ground. The Court, however, rejects that course and reaches the merits of the controversy. I join the opinion of the Court because I agree that the Court of Appeals erred in declaring the statute invalid on its face.

is left is fully operative as a law.'" See *Buckley* v. *Valeo*, 424 U. S. 1, 108–109 (1976), quoting *Champlin Refining Co.* v. *Corporation Comm'n*, 286 U. S. 210, 234 (1932).

Although federal courts generally have a duty to adjudicate federal questions properly before them, this Court has long recognized that concerns for comity and federalism may require federal courts to abstain from deciding federal constitutional issues that are entwined with the interpretation of state law. In *Railroad Comm'n* v. *Pullman Co.*, 312 U. S. 496 (1941), the Court held that where uncertain questions of state law must be resolved before a federal constitutional question can be decided, federal courts should abstain until a state court has addressed the state questions. *Id.*, at 501; see also *Hawaii Housing Authority* v. *Midkiff*, 467 U. S. 229, 236–237 (1984). This doctrine of abstention acknowledges that federal courts should avoid the unnecessary resolution of federal constitutional issues and that state courts provide the authoritative adjudication of questions of state law.

Attention to the policies underlying abstention makes clear that in the circumstances of these cases, a federal court should await a definitive construction by a state court rather than precipitously indulging a facial challenge to the constitutional validity of a state statute. There can be no doubt that a state obscenity statute concerns important state interests. Such statutes implicate "the quality of life and the total community environment, the tone of commerce in the great city centers, and, possibly, the public safety itself." *Paris Adult Theatre I* v. *Slaton*, 413 U. S. 49, 58 (1973). The nature of the overbreadth claim advanced by appellees suggests that abstention was required because the Washington statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Harman* v. *Forssenius*, 380 U. S. 528, 535 (1965).

The First Amendment overbreadth doctrine allows a challenge to the validity of a statute on its face only if the law is substantially overbroad. *City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U. S. 789, 799–801 (1984); *New York* v. *Ferber*, 458 U. S. 747, 769–773 (1982). Thus, analysis of the constitutional claims advanced by appellees neces-

sarily requires construction of the Washington statute to assess its scope. *Id.*, at 769, n. 24; *Broadrick* v. *Oklahoma*, 413 U. S. 601, 618, n. 16 (1973) ("[A] federal court must determine what a state statute means before it can judge its facial constitutionality"). Furthermore, a narrowing construction of a statute might obviate any challenge on overbreadth grounds. *E. g., id.*, at 617–618 (relying on interpretation of State Personnel Board and Attorney General to reject overbreadth claim). Where a state statute has never been construed or applied, it seems rather obvious that interpretation of the statute by a state court could substantially alter the resolution of any claim that the statute is facially invalid under the Federal Constitution.

The Court of Appeals opined that the Washington statute is not susceptible to a limiting construction and therefore any interpretation by the state court would "neither eliminate nor materially change the constitutional issues presented here." 725 F. 2d 482, 488 (1984). This assertion is simply implausible. As noted in the opinion of this Court, the conclusion below that the state statute reaches *any* expression protected by the First Amendment rests on a dubious interpretation of the word "lust" as used in the statute. *Ante*, at 500–501, n. 10. Both the text and the background of the Washington statute indicate that the state legislature sought to conform the moral nuisance law to the constitutional standards outlined by this Court in *Miller* v. *California*, 413 U. S. 15 (1973). Moreover, the state courts have demonstrated their willingness to construe state obscenity laws in accord with *Miller*. See *State* v. *J–R Distributors, Inc.*, 82 Wash. 2d 584, 512 P. 2d 1049 (1973), cert. denied, 418 U. S. 949 (1974).

Apart from its unwarranted belief that the statute is not fairly subject to a limiting construction, the Court of Appeals asserted that *Pullman* abstention should "almost never" apply where a state statute is challenged on First Amendment grounds "because the constitutional guarantee of free expression is, quite properly, always an area of particular

federal concern." 725 F. 2d, at 488. This Court has never endorsed such a proposition. See *Babbitt* v. *Farm Workers,* 442 U. S. 289, 306–312 (1979). On the contrary, even in cases involving First Amendment challenges to a state statute, absention may be required "'in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.'" *Id.,* at 306, quoting *Harman* v. *Forssenius, supra,* at 534; see also *Harrison* v. *NAACP,* 360 U. S. 167, 176–178 (1959).

The decision of the Court of Appeals represents a premature and avoidable interference with the enforcement of state law in an area of special concern to the States. Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when, as is the case here, the state courts stand willing to address questions of state law on certification from a federal court. Wash. Rev. Code §§ 2.60.010–2.60.900 (1983); Wash. Rule App. Proc. 16.16. Cf. *Bellotti* v. *Baird,* 428 U. S. 132, 150–151 (1976). In my view, the state courts should have been afforded an opportunity to construe the Washington moral nuisance law in the first instance.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

We granted certiorari to consider the holding of the United States Court of Appeals for the Ninth Circuit that the Washington state obscenity law, Wash. Rev. Code §§ 7.48A.010–7.48A.900 (1983), is substantially overbroad and therefore invalid on its face under the First Amendment because it defines "prurient" in such a way as to reach constitutionally protected material that stimulates no more than a healthy interest in sex. This statute is, in my view, unconstitutionally overbroad and therefore invalid on its face for the reasons given in my dissent in *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 73 (1973). I would therefore affirm the judgment of the Court of Appeals.