GRISBAUM, Judge.
These cases were consolidated for appeal following various district court rulings *1374 finding five video cassettes obscene, in violation of La.R.S. 14:106. We affirm.
ISSUE
The sole question presented is whether the trial court erred in finding the films “Push It To The Limit,” “Hot Merchandise,” “The Best of John Leslie — Wet Shots,” (Vol. I), “Blue Ribbon Blue,” and “Jane Bond Meets Thunderthighs” obscene.
FACTS
The Jefferson Parish Sheriff’s Department seized several adult video cassettes from various video stores. The State subsequently petitioned to have the videos declared obscene. Following adversarial hearings and after viewing the films, the district court found the films to be obscene. The defendants now appeal.
LAW
La.R.S. 14:106(A)(3) defines obscenity as the intentional
Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition, or display of obscene material, or the preparation, manufacture, publication, or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition, or display.
Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above, and (c) the work or thing taken as a whole lacks serious literary, artistic, political, or scientific value.
La.R.S. 14:106(A)(2)(b) provides:
Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
(i)Ultimate sexual acts, normal or perverted, actual, simulated, or animated, whether between human beings, animals, or an animal and a human being; or
(ii) Masturbation, excretory functions or lewd exhibition, actual, simulated, or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; or
(iii) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume that reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or
(iv) Actual, simulated, or animated touching, caressing, or fondling of, or other similar physical contact with a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
(v) Actual, simulated, or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose.
La.R.S. 14:106(F) provides:
(1) Except for those motion pictures, printed materials, and photographic materials showing actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, closeup depiction of human genital organs so as to give the appearance of the consummation of ultimate sexual acts, no person, firm, or corporation shall be arrested, charged, or indicted for any violations of a provision of this Section until such time as the material involved has first been the subject of an adversary hearing under the provisions of this Section, wherein such person, firm, or corporation is made a defendant and, after such material is declared by the court to be obscene, such person, firm, or corporation continues to engage in the conduct *1375 prohibited by this Section. The sole issue at the hearing shall be whether the material is obscene.
(2) The hearing shall be held before the district court having jurisdiction over the proceedings within seventy-two hours after receipt of notice by the person, firm, or corporation. The person, firm, or corporation shall be given notice of the hearing by registered mail or by personal service on the owner, manager, or other person having a financial interest in the material; provided, if there is no such person on the premises, then notice may be given by personal service on any employee of the person, firm, or corporation on such premises. The notice shall state the nature of the violation, the date, place, and time of the hearing, and the right to present and cross-examine witnesses.
(3) The state or any defendant may appeal from a judgment. Such appeal shall not stay the judgment. Any defendant engaging in conduct prohibited by this Section subsequent to notice of the judgment, finding the material to be obscene, shall be subject to criminal prosecution notwithstanding the appeal from the judgment.
The First Amendment protects all ideas having the slightest redeeming social importance, even those ideas which may be considered by some as unorthodox, controversial, or even hateful to the prevailing climate of opinion. However, the First and Fourteenth Amendments are not absolutes and have never been treated as such by the courts. Certain ideas may be excluded from their protection if those ideas encroach upon limited areas of more important interests. The United States Supreme Court has categorically rejected the argument that obscenity falls within the purview of protected speech, finding it implicit in the history of the First Amendment that obscenity is rejected as being utterly without redeeming social importance. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Accord Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).
A factual determination of obscenity by the district court necessarily encompasses a determination of unprotected speech. Therefore, it is imperative that the appellate court make an independent constitutional judgment as to whether the material is indeed obscene. State v. Walden Book Co., 386 So.2d 342 (La.1980).
In Miller, supra, 93 S.Ct. at 2615 the Supreme Court, recognizing the inherent dangers in attempting to regulate any form of expression, devised the three-part test for determining whether certain material is obscene:
(a) whether “the average person, applying contemporary community standards” would find that the work, taken as a whole appeals to the prurient interests .... (b) whether the work depicts or describes, in a patently offense way, sexual conduct specifically defined by the applicable state law; and (c) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value.
The guidelines set forth in the Miller test have been followed by the Louisiana legislature, which adopted the Miller definition of obscenity and specifically described the types of sexual conduct that would constitute obscenity under La.R.S. 14:106.
As noted by the court in State v. Amato, 343 So.2d 698 (La.1977), sex and obscenity are not synonymous, and nudity alone is not enough to make material legally obscene. It is, therefore, incumbent upon the State to prove that sexually oriented material meets all three requirements of the Miller test. Only then can it be proscribed by law. State v. Luck, 353 So.2d 225 (La.1977).
Whether or not material appeals to “ ‘prurient interests’ ” or is “ ‘patently offensive’ ” are questions of fact which cannot and should not be fixed and limited by a uniform national standard. Miller, supra, 93 S.Ct. at 2618.
*1376 The word “prurient” was defined in footnote 20 to the opinion in Roth v. United States, 1957, 354 U.S. 476, 487, 77 S.Ct. 1304 [1310], 1 L.Ed.2d 1498, to lack “significant difference” from the definition of the A.L.I. Model Penal Code, § 270.0(2) (Tent.Draft No. 6, 1957): “a shameful or morbid interest in nudity, sex or excretion.” These definitional terms are all pejoratives: “shameful” is defined by the dictionary as “disgraceful or indecent”, [sic] “morbid” means “psychologically unhealthy.” Each definition in turn invites another, subjective and invidious.
The word “prurient” itself implies a value judgment. Like many other words used in law to express social worth or lack of worth, to distinguish legally acceptable from legally unacceptable conduct, it cannot be precisely defined or reduced to synonyms susceptible of objective application. Like the philosophical search for a criterion of truth, the effort to define what is “negligence,” or what is “due process of law,” or, indeed what is “justice,” the quest is endless. For the word used as a touchstone itself sums up a societal judgment.
United States v. New Orleans Book Mart, Inc., 328 F.Supp. 136, 141 (1971).
The purpose of the community standards test is to ensure that a cross section of ideas and philosophies are considered when evaluating a particular work. State v. LeBlang, 530 So.2d 601 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1213 (La.1989). “A picture is not to be condemned merely because it would offend a prude. But it is not to be considered nationally accepted merely because there are some who are so tolerant that they can never be offended.” New Orleans Book Mart, Inc., supra, at 141. Therefore, we must look at community standards as a whole, rather than relying upon personal opinions or the propriety and taste of a few. LeBlang, supra.
ANALYSIS
Initially, we note that the State submits the five video cassettes seized as the best evidence of violation of the statutes and as proof beyond a reasonable doubt that all three parts of the Miller test were met. The defendants, on the other hand, offer testimony of several store owners/managers and customers, as well as that of an expert in human sexuality, to rebut this evidence. They argue that the films do nothing more than arouse a normal, healthy interest in sex and that films of this nature are protected by the First Amendment. Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). In support of their contentions, defendants offer the testimony of several video store owners/managers and several adult movie customers who each testify that they do not feel that the movies appeal to prurient interests. Specifically, none were offended by scenes depicting masturbation, lesbianism, group sex, close-up views of sexual intercourse, fellatio, and cunnilingus. The defendants likewise contend that the films have serious scientific value and offered the testimony of Dr. Raymond Swan, an expert in human sexuality, as proof. He testified that adult videos are commonly used in treating patients with sexual dysfunctions and that over the past few years he has seen a trend toward more open expression and acceptance of differing sexual practices.
After careful viewing of the films in question, we find that each film, taken as a whole, appeals primarily to the prurient interest and goes substantially beyond customary limits of candor and affronts our contemporary community standards of decency. Additionally, we find that each film does in fact depict, in a patently offensive manner, conduct which is described in La. R.S. 14:106(A)(2)(b) as “hard-core sexual conduct.” Finally, we note that “[a]t a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection.” See Miller, supra, 93 S.Ct. at 2616 (emphasis added). If *1377 the material, taken as whole, evidences an intent to convey literary, artistic, political, or scientific ideas or advocates a particular position, then the intent is “serious.” See Walden Book Co., supra. From our view of the evidence, we found no discernible storyline in any of the films. The few lines of nonsensical dialogue which were scattered throughout the films were used merely as a means of stringing together unrelated scenes of hard core sexual conduct. By no stretch of the imagination, would any intelligent being plausibly assert that any of these films have “serious” literary, artisitic, political, or scientific value in Louisiana. We particularly note that the depiction of a lesbian encounter between a teacher and student and a heterosexual sex act between an uncle and niece are suggestive of sexual activity with children. The inferences of pedophilia and incest are not encompassed in the healthy interest in sexual activity the defense attempts to portray. Nor is the suggestion that women accept and enjoy violence directed at them during sexual intercourse, as inferred in one scene in which the male partner slaps the female during intercourse, in line with contemporary community standards of decency. Accordingly, we find the State has met its burden of proof, which more than adequately satisfied all of the three requirements of the Miller test. Defendants, on the other hand, have failed to adequately rebut this evidence.
Other issues have been raised, which we find have no merit.
Therefore, for the reasons assigned, the judgments of the trial court are hereby affirmed. All costs of this appeal are to be assessed against the appellants.
AFFIRMED.