**David BACH & Nicole Bach, Plaintiffs,**

**v.**

**SCHOOL BOARD OF THE CITY OF VIRGINIA BEACH, Virginia; Chairman Daniel D. Edwards, in his Official Capacity, Defendants.**

**No. Civ.A. 200CV516.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 27, 2001.

David Bach & Nicole Bach, Virginia Beach, VA, plaintiff pro se.

Richard Hoyt Matthews, Pender & Coward, Virginia Beach, VA, Kimberly Rouse Van Essendelft, Assistant City Attorney's Office, Virginia Beach, VA, for defendant.

## *OPINION AND ORDER*

MORGAN, District Judge.

### PROCEDURAL HISTORY

On Thursday, March 15, 2001, the Court held a bench trial in this case and took the matter under advisement. This Order sets forth the judgment of the Court.

On July 11, 2000, the Plaintiffs filed suit against the Virginia Beach School Board and its Chairman, Daniel Edwards, charging that the provision in the Virginia Beach School Board's Bylaws ("Bylaws") prohibiting "personal attacks" during the public comment period of School Board meetings is unconstitutional. The Plaintiffs attacked the provision on three grounds: (1) it is an impermissible content-based restriction both facially and as applied to the Plaintiffs; (2) the Bylaw is unconstitutionally vague; and (3) it is unconstitutionally overlybroad. Through Order dated September 7, 2000, the Court denied the Plaintiffs' motion for a preliminary injunction. The Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit and moved this Court for injunctive relief pending appeal. That motion was denied on October 15, 2000.

While the case was pending before the Fourth Circuit, the School Board substantially revised the "personal attacks" provision with the aim of removing any poten-

tial constitutional deficiency. Believing that the comprehensive revision remedied any constitutional infirmity, the Defendants moved this Court to dismiss the Plaintiffs' case as moot. On January 8, 2001, the Court granted the motion to dismiss with respect to the as applied challenge, the overbreadth challenge, and the vagueness challenge. The Court denied the motion with respect to the facial challenge and granted the Plaintiffs leave to amend that cause of action to conform their arguments to the revised version of the Bylaws.

On February 7, 2001, the Plaintiffs filed an amended complaint. The Defendants moved for summary judgment and moved for a continuance of the trial pending resolution of the motion and the Plaintiffs filed a cross-motion for summary judgment. The Plaintiffs also moved to consolidate the outstanding motions with the trial on the merits. The Court proceeded with the trial on the merits, thereby ending the litigation in a single proceeding.

## FINDINGS OF FACT

Virginia Beach School Board Bylaw 1–48 was designed to preserve decorum and order during School Board meetings and to ensure that the School Board is free to transact business with minimal disruption.[1]

### 1. SCHOOL BOARD BYLAWS
**Decorum and Order–School Board Meetings**
A. It is the intent of the School Board, ("hereinafter Board") (sic) by adoption of this Bylaw, to ensure that the affairs of the Board and Board Committees may be conducted in an open and orderly manner, that all persons desiring to address the Board are afforded an opportunity to do so in the order in which they sign up to speak, that persons in attendance may observe and hear the proceedings of the Board without distraction, and that the members of the Board and Board employees are able to transact the business of the Board with minimal disruption.
B. Persons addressing the Board shall:
 1. Confine their comments to matters germane to the business of the School Board of the city of Virginia Beach.
 2. Avoid references, statements, or conduct reasonably likely to result in disruption or undue delay in the orderly transaction of the business scheduled for consideration by the Board. This provision means and includes, but is not limited to, attacks or accusations regarding the honesty, character, integrity or other like personal attributes of any identified individual or group. Such comments are prohibited because, by virtue of their personal nature, character and/or manner of presentation, they would fairly call for an immediate response by the person or group so identified, thus delaying or disrupting consideration of agenda items scheduled for consideration by the Board.
 3. Refrain from words or statements which, from their usual construction and common acceptance, are construed as insults and tend to violence or breach of the peace.
 4. Refrain from obscenity, vulgarity, or other breach of respect.
 5. Comply with the time limits for public comment set forth in Bylaw 1–47.
 6. Refrain from cumulative or repetitive remarks for the reasons identified in Bylaw 1–47.
C. During the public comment portion of the agenda, the School Board shall not entertain comment regarding any pending student discipline or employee grievance matters. The appropriate forum for such matters is the applicable administrative hearing provided by State law or, where appropriate, court proceeding.
D. Expressive activities including, but not limited to, petitioning, picketing, displaying signs or posters, solicitation, demonstrating, pamphlet distribution, and conducting polls shall not be permitted in the Board chambers, the Board conference room, the waiting areas and corridors adjacent to the chambers and conference room, the School Board administration building, or any school building in which the Board is meeting.
E. This bylaw does not preclude persons addressing the Board from delivering the Board or its clerk written materials including reports, statements, exhibits, letters, or signed petitions. Nor does this bylaw preclude those addressing the Board from using a chart or graph during their verbal presentation. Furthermore, nothing herein shall be interpreted

Among its provisions is a group of regulations governing the public comment portion of the meetings. The Plaintiffs claim that one of those regulations, Bylaw 1–48(B)(2) ("contested provision"), unconstitutionally restricts speech on the basis of its content by instructing potential speakers to avoid "attacks or accusations regarding the honesty, character, integrity or other like personal attributes of any identified individual or group."

Plaintiff David Bach spoke during the public comment session of a School Board meeting after the enactment of the new Bylaw. He used the allotted time to voice his concerns over the qualifications, performance, and conduct of certain named school officials, whom he alleged had a conflict of interest. The Chairman did not invoke the contested provision to cut short Mr. Bach's speech because of its subject matter. Mr. Bach was only interrupted when he was informed that his time had expired. After taking additional time to conclude his remarks, Mr. Bach took his seat.

### OPINION

 The standard of reviewing a prior restraint on speech in a First Amendment case depends on the type of forum in which the movant seeks the speech to occur. The parties agree that by incorporating a public comment period into its agenda, the School Board created a limited public forum. That position is supported by case law and by the facts in this case. *See generally, Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 803, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) ("[I]n *Madison...*, the Court held that a forum for citizen involvement was created by a state statute providing for open school board meetings."). In a limited public forum, content-neutral regulations may be drawn to restrict the time, place, and manner of protected speech, as long as the regulation is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels for communication. *Id.* Content-based regulations, however, are subject to a more exacting standard of scrutiny and must be narrowly drawn to achieve a compelling state interest. *Id.* Many of the provisions in Bylaw 1–48 are content-neutral, targeting the manner of the speech rather than its content. For example, speakers are required to sign-up in advance of the meeting and are subject to a time limit. Bylaws 1–48(A) & (B)(5). The parties agree that the School Board may properly impose such reasonable restrictions without implicating a First Amendment right. The Defendants claim that the contested provision is one of the many content-neutral provisions that regulates the manner in which the speaker relays the message. The Plaintiffs differentiate the contested

---

to prohibit citizens from addressing oral or written comments or complaints on any subject germane to the business of the Board to the Board, its constituent members, the clerk of the Board or school administration outside the context of the public meeting.

F. The Chairman or other presiding officer shall preserve decorum and shall decide all questions of public order, subject to appeal to the Board.

G. No person attending a meeting of the School Board, in any capacity, shall use or allow to sound, any electronic telecommunications device such as a cell phone or beeper within the room in which the Board is meeting. Notice of this restriction shall be posted by the Board Clerk, at any door to any room in which the Board is to meet, at least thirty (30) minutes prior to the scheduled start of any Board meeting.

H. At the request of the Chairman or Superintendent, a city police officer shall act as sergeant-at-arms at all Board meetings. That officer shall, under the direction of the Chairman or other presiding officer, have charge of the Board chambers, the Board conference room, the waiting areas and corridors adjacent thereto, and the school administration building, and shall prevent disorder or interruption of the business of the Board.

provision from the time limit and registration requirements by asserting that the contested provision directly targets speech that attacks honesty, character, integrity, or any like attribute and reaches no other topic of discussion. Thus, the Plaintiffs conclude that it should be subject to a more exacting level of scrutiny.

■ The Plaintiffs classify the contested provision as a content-based restriction because it prohibits speech whose subject matter falls within the particular category of criticism. The contested provision, in their view, acts as a filter to screen out any negative comments toward the current administration, while allowing their proponents to speak at will. The Chairman can effectively "gavel-down" and silence much criticism of school officials by interpreting such comments as attacks against honesty, integrity, or character. At the same time, a speaker would be able to proffer laudatory praises of the school officials without fear of being silenced, because the contested provision places no corresponding ban on statements that promote or inflate the honesty, integrity, or character of a named official. The Supreme Court has long since warned about the pernicious effects of an artificially controlled public debate and have held that the First Amendment serves to prevent such manipulation. *See First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 785–786, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("Especially where . . . . the legislature's suppression of speech suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people, the First Amendment is plainly offended."); *City of Madison Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175–76, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) ("To permit one side of a debatable public question to have a monopoly in expressing its views to the government is the antithesis of constitutional guarantees."). The Plaintiffs

contend that the contested provision is a vehicle through which the School Board can skew and manipulate public debate in favor of the current school administration.

Two other school boards enacted policies similar to the contested provision in this case, and the courts reviewing these policies found both to be content-based restrictions. These policies contained different language, yet each had the same effect. Participants in an open session of a public meeting were permitted to praise the actions of school employees but were prohibited from making any critical or accusatory comments. *Leventhal v. Vista Unified Sch. Dist.*, 973 F.Supp. 951, 953–54 (S.D.Ca.1997); *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F.Supp. 719, 725 (C.D.Cal.1996). The *Baca* Court, following the decision of the *Leventhal* Court, held that it is "difficult to imagine a more content-based prohibition on speech than [a] policy, which allows expression of two points of view (laudatory and neutral) while prohibiting a different point of view (negatively critical) on a particular subject matter . . . . ." 936 F.Supp. at 730. The Plaintiffs allege that the contested provision draws the same distinction on the content of the speech—favorable versus unfavorable—and under the reasoning in *Baca* and *Leventhal,* it cannot be considered content-neutral.

The Defendants responded that the contested provision does not suffer from the same deficiencies in *Baca* and *Leventhal* because it specifically allows for comments about public officials' qualifications and conduct in administering their duties, as long as the statements otherwise conform to the Bylaws. The Defendants explained that the contested provision only prohibits attacks that are targeted at school officials in their personal capacity. According to the Defendants' interpretation of the contested provision, a speaker, therefore, is

free to allege that a school official lied about spending school funds for personal use. That same speaker would be cut short, however, if the speaker called the school official a liar. The Defendants believe that this example demonstrates that the contested provision regulates the manner of the speech not its content.

 The First Amendment affords the broadest protection to political expression in order to sustain the unfettered interchange of ideas to bring about political and social change and promote the will of the people. *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The Supreme Court has repeatedly explained that "it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions, and this opportunity is to be afforded for vigorous advocacy no less than abstract discussion." *New York Times v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This includes the ability to question the fitness of the community leaders, including the administrative leaders in a school system, "especially in a forum created specifically to foster discussion about a community's school system." *Leventhal,* 973 F.Supp. at 958. The contested provision tests the boundaries of the fine distinction between content-based and content-neutral regulations. First Amendment scholars, judges, and attorneys could engage in endless debate over whether it discriminates against speech on the basis of its content by allowing general praise while silencing criticism. Fortunately, the Court need not engage in such a comprehensive analysis, for a policy that deters individuals from speaking out on an issue of public importance violates the First Amendment. *Secretary of State of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 967–68, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). The contested provision has that effect and for that reason is unconstitutional.

If the contested provision would have been written in the language of the Defendants' argument at trial, the Court may have concluded that it is a content-neutral restriction on the manner of speech. The Defendants' lengthy explanation, however, does not solve the constitutional issue before the Court. Potential speakers do not have the benefit of the Defendants' scholarly research of the constitutional basis of the contested provision when attempting to determine if their comments are in conformity with Bylaw 1–48(B)(2). Their only guidance is the Bylaw itself, and thus, the contested provision must be examined on its face without regard to the Defendants' technical interpretation of its proscriptions. Some citizens may share the Defendants' reading of the contested provision and may feel free to criticize school officials' conduct without threat of sanctions. Other citizens, however, may not appreciate the distinction drawn by the Defendants between attacking the conduct but not the individual. These citizens may see no distinction between stating, "the principal is a liar" and "the principal lied to us about spending the money." According to the Defendants' interpretation, the latter would be acceptable but the former forbidden by the contested provision. It is reasonable for these citizens to read the contested provision and conclude that most comments critical of school officials constitute an attack on their honesty, character, or integrity and are therefore improper subjects on which to speak. Accordingly, their concerns may not be shared with their fellow citizens, and the "robust public debate" the First Amendment seeks to foster will be thwarted. *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).

There is no indication that the School Board acted in bad faith in enacting or enforcing this restriction. The video shown by the Defendants demonstrates

that Mr. Bach was not silenced when he accused several officials by name of being involved in a conflict of interest. Yet the content of the contested provision may prevent many citizens from so speaking.[2] While subsection E of Bylaw 1–48 offers a means of communicating with the School Board and administration outside the limited public forum, it does not suggest that such communications are exempt from the proscription of the contested provision. A policy that chills protected speech cannot stand. The Court **FINDS** that the contested provision in Bylaw 1–48 is unconstitutional as a prior restraint upon speech in a limited public forum.

■ Having found that a portion of the Bylaw cannot stand, the issue now becomes whether Bylaw 1–48 must be stricken in its entirety or whether the Bylaw can remain in effect following the deletion of the contested provision. The Supreme Court, recognizing the inefficiency in requiring the legislature to rewrite laws each time a section, phrase, or even a word is stricken on constitutional grounds, stated that when a statute "seek[s] to punish both protected and unprotected material[,] ... [t]he statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact." *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). Partial invalidation is not appropriate, however, if the court finds that the legislature would not have passed the act had it known the challenged provision was invalid. *Id.* at 506, 105 S.Ct. 2794.

■ Bylaw 1–48 is a comprehensive regulation designed to preserve order and decorum during School Board meetings. The Defendants proffered that the purpose in including the contested provision was to prevent attacks of a personal nature against school officials that tend to trigger the urge to immediately respond to the allegations and thereby disrupt the orderly flow of business. Numerous other sections of Bylaw 1–48 promote that aim. For example, Bylaw 1–48(B)(4) requires speakers to "[r]efrain from obscenity, vulgarity, or other breach of respect." Speakers are instructed in Bylaw 1–48(B)(3) to "[r]efrain from words or statements which, from their usual construction and common acceptance, are construed as insults and tend to violence or breach of the peace." The "liar example" relied upon by the Defendants arguably violates this provision in this Court's view. The contested provision is not essential to maintain decorum and order during the meetings; it is only one of many provisions designed to help achieve that end. The Court **FINDS** that the contested provision is not a critical or essential part of Bylaw 1–48 and the Bylaw as a whole is not dependant entirely upon the validity of the contested provision. Accordingly, the Court **ORDERS** that the contested provision, Bylaw 1–48(B)(2), be stricken. The remaining provisions of Bylaw 1–48 shall remain unaffected by this Order.

The Clerk is **REQUESTED** to send a copy of this Order to the Plaintiffs and all counsel of record.

It is so **ORDERED**.

---

**2.** Although Mr. Bach is proceeding *pro se,* he is a law school graduate and a member of the bar of another state.