936 F.Supp. 719 (1996)
Victoria BACA, Plaintiff,
v.
MORENO VALLEY UNIFIED SCHOOL DISTRICT; School Board President Frank M. West, in His Official and Individual Capacity, Defendants.
No. EDCV 96-0267 RT (VAPx).
United States District Court, C.D. California, Eastern Division.
August 1, 1996.
*720 *721 *722 *723 *724 Carol A. Sobel, Mark D. Rosenbaum, Los Angeles, CA, Douglas E. Mirell, Los Angeles, CA, for plaintiff.
Spencer E. Covert, Mark S. Williams, Parker, Covert & Chidester, Tustin, CA, for defendants.

ORDER GRANTING PLAINTIFF VICTORIA BACA'S MOTION FOR A PRELIMINARY INJUNCTION
TIMLIN, District Judge.
Plaintiff Victoria Baca's (plaintiff's) motion for a preliminary injunction (motion) to enjoin the Moreno Valley Unified School District (District), Frank M. West (West), the president of District's school board (collectively defendants), and defendants' agents and employees from enforcing certain provisions of District's policy related to speech at school board meetings, was heard by the Honorable Judge Robert J. Timlin.
The court having taken the matter under submission, and after consideration of oral argument and all papers presented to the court, the court grants plaintiff's motion for the reasons set forth in the following opinion.

I.

PROCEDURAL HISTORY
Plaintiff has filed a verified complaint for injunctive and declaratory relief and damages against defendants. The complaint seeks a declaration that:
(1) District's policy, which prohibits criticism of District employees during the open sessions of District's school board meetings (the policy), is an overbroad and impermissible prior restraint on plaintiff's and other citizens' rights of free speech and petition *725 under the constitutions of the United States and California;
(2) the school board's (Board's) selective enforcement of the policy was a violation of plaintiff's right to be free of arbitrary and capricious enforcement of a governmental regulation under the constitution of the United States; and
(3) the policy is a violation of plaintiff's right publicly to share her criticisms of school administration with the Board and concerned community members pursuant to California Government Code section 54954.3, a code section found in California's open meeting law, commonly known as the Ralph M. Brown Act (Brown Act). Cal.Govt.Code, §§ 54950 et seq.[1]
Plaintiff also filed an ex parte application for a temporary restraining order and for an order to show cause re the issuance of a preliminary injunction enjoining defendants and their agents and employees from enforcing against plaintiff the provisions of District's policy which permitted West, as the Board president, "to deny permission to speak in the public session portion of the Board meeting to any person who mentions, by name or mere title, any public employee of the defendant school board."
This court filed an order (1) restraining defendants and their agents, employees and successors from applying and enforcing the policy during the public forum session of Board meeting and (2) requiring defendants to appear to show cause why they should not be so enjoined.
Following oral argument at the hearing on the order to show cause, the parties stipulated that the temporary restraining order could be extended until August 6, 1996, and that each side would provide the court with briefing on whether the policy applied to all public comments during the public, or open, as opposed to the executive, or closed, session of all District's Board meetings, or applied only to the public comment period of such open sessions, and whether the relief requested by plaintiff encompassed comments made during the open session of Board meetings, or only encompassed comments made during the public comment period.
Having considered such further briefing, the court concludes that the policy, by its terms, applies to all public comments during open sessions of the Board meetings. The court further concludes that the relief requested by plaintiff, i.e., a declaration that the policy suffers from the defects noted above, encompasses the policy as it applies to all such public comments.

II.

FACTUAL BACKGROUND
District's policy provides, in pertinent part:
"Open Session Charges or Complaints Against Employees ... Prohibited.
"1. Employees.
"No oral or written presentation in open session shall include charges or complaints against any employee of the District, regardless of whether or not the employee is identified by name or by any reference which tends to identify the employee. If an attempt is made to include charges or complaints against an employee in any way, the Board President will order the presentation stopped at once, and the Board meeting will continue in accordance with the established agenda. All charges or complaints against employees must be submitted to the Board under provisions of Board policy.
"Any individual who violates this policy will be warned to discontinue his/her comments immediately. If the individual willfully interrupts the meeting by refusing to comply with the warning, the Board President may authorize the removal of the individual pursuant to Government Code section 54957.9."[2]
*726 According to plaintiff's declaration, plaintiff is the parent of a student in the MVUSD, and is president of the Mexican Political Association (MPA) a statewide community activist organization. On May 28, 1996, she attended an open meeting of District's Board. This meeting included a public comment period during which citizens could comment on matters not necessarily included on the Board's meeting agenda.
During the public time period allotted for her comments, plaintiff identified by name and by reference to position two District employees: David Kuzmich, principal of Vista Heights Middle School (Kuzmich), and David Andrews, District's superintendent (Andrews), and alleged that numerous complaints brought to them by parents of children at Vista Heights Middle School went unaddressed. As she spoke, plaintiff was informed by West that she could not mention either employee by position or by name, and that another violation of the policy would result in her removal from the meeting.
Plaintiff continued her remarks and again referred to Kuzmich by position and to Andrews by position and name. She was then physically removed from the meeting by a Riverside County sheriff's deputy at the request of West. Once removed from the meeting, she was watched over by two sheriff's deputies to ensure that she did not attempt to go back into the meeting room.
Plaintiff was the only speaker to be physically removed from the room. However, other members of the public who spoke before and after plaintiff did also identified District employees by name and/or position, sometimes in a critical manner. Although some of those who spoke after plaintiff did were warned by West not to violate the policy, they were not removed.
Plaintiff states that she desires to "learn of shared concerns from other speakers and to allow them to learn of mine through use of the public comment period of the school board meeting." (Plaintiff's Declaration, p. 4, ¶ 10.) She states that she believes she was singled out for expulsion because of her out-spokenness and because of her political activities related to educational and other school-related issues.

III.

DISCUSSION

A. Criteria for Issuance of a Preliminary Injunction

The traditional criteria which must be met before a preliminary injunction will issue are: (1) strong likelihood of success on the merits; (2) possibility of irreparable injury to plaintiff if relief is not granted; (3) a balance of hardships favoring plaintiff; and (4) advancement of the public interest in certain kinds of cases. Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1200-1201 (9th Cir. 1980). In the Ninth Circuit, a party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. Id. at p. 1201.
These are not separate tests, but the outer reaches of a single continuum. Id. The moving party has the burden of proof on each element of either test. Prescott v. County of El Dorado, 915 F.Supp. 1080, 1084 (E.D.Cal.1996). Applying the traditional criteria for issuance of a preliminary injunction to the facts of this case, the court concludes, as discussed below, that the plaintiff has met all four criteria, and that a preliminary injunction should issue.

B. Plaintiff Has Demonstrated a Strong Likelihood of Success on the Merits

Plaintiff has demonstrated that there is a strong likelihood that she will succeed on the merits, i.e., that she will succeed in establishing that: (1) speech criticizing District employees is protected from prior restraint or *727 censorship by the freedom of speech components of the United States and California constitutions; (2) the open session of a school board meeting is a designated and limited public forum pursuant to the Brown Act; (3) regulations of speech in such fora must meet the same constitutional standards as must regulations of speech in traditional public fora; and (4) the policy is content-based, not narrowly drawn to effectuate compelling state interests, and therefore is facially unconstitutional.

1. Speech Criticizing a District Employee, Even If Later Proved to Be Defamatory, Is Protected by Both the California[3]and Federal Constitutions from Government Censorship and Prior Restraint

Plaintiff contends that the policy is a prior restraint on protected expression, and as such it violates the California Constitution. Defendants suggest that plaintiff's speech "regarding child abusers and racists" is not protected by the First Amendment because it is slanderous and is a "false light utterance[]," and that therefore District has a right to prohibit these statements. (Defendants' Supp. Opposition, p. 3.)
Neither side is correct. Plaintiff is wrong because the policy, which merely prohibits certain speech by persons already admitted to and making use of a public forum, is not a true or classic prior restraint, because it does not give a public official the power to deny use of the forum in advance of the actual expression. Westbrook v. Teton County School Dist. No. 1, 918 F.Supp. 1475, 1481-1482 (D.Wyo.1996) (Westbrook). Instead, the policy is a species of censorship, i.e., a "present government interference with or suppression of expression" accomplished through a "`regulatory, proscriptive or compulsory' exercise of governmental power." Keene v. Meese, 619 F.Supp. 1111, 1118 (E.D.Cal.1985), quoting Laird v. Tatum, 408 U.S. 1, 11, 92 S.Ct. 2318, 2324-2325, 33 L.Ed.2d 154 (1972). Defendant is wrong because neither the United States nor California constitution allows government to censor statements merely because they are false and/or defamatory.
The California Constitution, article I, section 2 provides, in relevant part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." This provision provides an even broader guarantee of the right of free speech than does the First Amendment. Blatty v. New York Times Co., 42 Cal.3d 1033, 1041, 728 P.2d 1177, 1182, 232 Cal.Rptr. 542, 546-547 (1986); Wilson v. Superior Court, 13 Cal.3d 652, 658, 532 P.2d 116, 119 Cal.Rptr. 468 (1975); Gilbert v. National Enquirer, Inc., 43 Cal.App.4th 1135, 1145, 51 Cal.Rptr.2d 91 (1996). "`The wording of this section is terse and vigorous, and its meaning so plain that construction is not needed. The right of the citizen[s] to freely speak, write and publish [their] sentiments is unlimited, but [they are] responsible at the hands of the law for an abuse of that right. [They] shall have no censor over [them] to whom [they] must apply for permission to speak, write, or publish, but [they] shall be held accountable to the law for what [they] speak[], what [they] write[], and what [they] publish[].' [Citation.]" Aguilar v. Avis Rent-A-Car System, Inc., 45 Cal.App.4th 933, 973, 53 Cal.Rptr.2d 599 (1996), Peterson, P.J., concurring in part and dissenting in part, quoting Dailey v. Superior Court, 112 Cal. 94, 97, 44 P. 458, 459 (1896).
Thus, under the California Constitution, District's Board may not censor speech by prohibiting citizens from speaking, even if their speech is, or may be, defamatory.[4] Therefore, regardless of any lesser protection *728 for speech provided by the United States constitution[5], there is a strong likelihood that plaintiff will establish that she is entitled to a declaration that District cannot prohibit speech on the ground that it is, or may be, false or defamatory, let alone on the the ground that it is negatively critical of District's employees.[6]

2. The Open Session of a School Board Meeting Is a Designated, Limited Public Forum

Traditional public fora are places such as parks and streets, which historically have been used for purposes of public assembly. Perry Educ. Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 45, 103 S.Ct. 948, 954-955, 74 L.Ed.2d 794 (1983) (Perry). A designated, as opposed to a traditional, public forum is a public forum created by government designation as "a place or channel of communication for use by the public at large...." Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 803, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985) (Cornelius); Perry, 460 U.S. at 45 and 46, fn. 7, 103 S.Ct. at 955, fn. 7, 74 L.Ed.2d 794 (1983).
Access to a designated public forum may be limited by the government if it designates public property as available only for "use by certain speakers, or for the discussion of certain subjects, ..." Cornelius, 473 U.S. at 803, 105 S.Ct. at 3449, supra; Perry, 460 U.S. at 45, n. 7, 103 S.Ct. at 955, n. 7; Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (forum limited to student groups); City of Madison Joint Sch. Dist. v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) (forum limited to subject matter of school board business).[7] If the state does limit access to the forum based on *729 subject matter or speaker identity, access limitations must be reasonable in light of the purpose served by the forum and must be viewpoint neutral. Lamb's Chapel v. Center Moriches Sch. Dist., 508 U.S. 384, 392-393, 113 S.Ct. 2141, 2147, 124 L.Ed.2d 352 (1993) (Lamb's Chapel).
The State of California has designated certain public property for use as public fora. Under the Brown Act, the meetings of certain public bodies must be open to the public, § 54953[8], and the public must be allowed to speak at such meetings "on any item of interest to the public, ... that is within the subject matter of the legislative body, ..." § 54954.3.[9]
The Brown Act applies to school districts and to school boards. §§ 45951, 54952[10]; see Frazer v. Dixon Unified Sch. Dist., 18 Cal.App.4th 781, 790-791, 22 Cal.Rptr.2d 641, 648-649 (1993).
Thus, by opening school board meetings to public comment "on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body," Govt.Code, § 54954.3(a), the California Legislature has designated school board meetings as limited public fora, i.e., fora open to the public in general, but limited to comments related to the school board's "subject matter." Therefore, the open sessions of District's Board meetings are limited public fora, and any regulation of speech in such fora must be reviewed in light of the nature of the fora.[11]

3. The Same Constitutional Standards of Scrutiny Apply to the Regulation of Speech in The Limited Public Forum of an Open Session of a School Board Meeting As Apply to the Regulation of Speech in a Traditional Public Forum

Defendants contend that when a limited public forum is involved, the applicable standard of constitutional analysis is not the strict scrutiny or compelling interest test applied to traditional public fora, citing White v. City of Norwalk, 900 F.2d 1421, 1423 (9th Cir.1990). Notably, however, defendants never clearly state what test does apply when a court decides the constitutionality of a policy which regulates or prohibits certain speech in a limited public forum.
Defendants' lack of clarity can be traced to the fact that defendants have confused *730 two different principles, i.e., they have confused the rule that when the state creates a limited public forum it properly may limit the subject matter to be discussed with the rule that once the particular subject matter which may be discussed in a particular limited forum has been designated, the government may not then also limit the views which may be expressed on that subject matter. Lamb's Chapel, 508 U.S. at 392-393, 113 S.Ct. at 2147, supra. Thus, in White v. City of Norwalk, the case cited by defendants, the court held that although city officials properly could restrict public speakers to the subject matter at hand, i.e., the particular agenda item being discussed, and could stop speech which was unrelated to the subject matter and hence irrelevant, the city officials could not cut off speech because the moderator disagreed with the view expressed. 900 F.2d at 1424-1425.
Thus, contrary to defendants' contention, the applicable standard of review for testing the constitutionality of regulations of speech in a designated, limited public forum is the same standard which applies to regulation of speech in a traditional public forum. Perry, 460 U.S. at 45-46, 103 S.Ct. at 955. This means that even in a limited public forum, before the state can enforce "[any] content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end," and that although "[r]easonable time, place and manner regulations are permissible," they must be "content-neutral, ... narrowly tailored to serve a significant government interest, and leave open ample channels of communication. [Citations.]" Id.; Clark v. Burleigh, 4 Cal.4th 474, 483, 841 P.2d 975, 980, 14 Cal.Rptr.2d 455, 460, supra; see also 4 Rotunda & Nowak, Treatise on Constitutional Law (2d ed. 1992) § 20.47 at p. 311.

4. The Policy Contains Content-Based Prohibitions

District's policy clearly contains content-based prohibitions on speech, despite defendants' assertions to the contrary. It forbids, at the risk of expulsion from the forum, speech which contains any "charges or complaints against any employee of the District, regardless of whether or not the employee is identified by name or by any reference which tends to identify the employee." (Emphasis added.) It is difficult to imagine a more content-based prohibition on speech than this policy, which allows expression of two points of view (laudatory and neutral) while prohibiting a different point of view (negatively critical) on a particular subject matter (District employees' conduct or performance). Burson v. Freeman, 504 U.S. 191, 197, 112 S.Ct. 1846, 1850, 119 L.Ed.2d 5, 13 (1992) ("[T]he First Amendment's hostility to content-based regulation extends ... to a restriction on a particular viewpoint.... [Citations]"); see also Lamb's Chapel, 508 U.S. at 392-393, 113 S.Ct. at 2147, supra. In fact, policies which attempt to suppress or burden only critical speech are regularly held to be content-based. See, e.g., Westbrook v. Teton County School Dist. No. 1, 918 F.Supp. 1475, 1494, (D.Wyo.1996), holding that a school district's policy, which limited and restricted teachers' speech criticizing other staff members, administrators or school board members by restricting the audience to which such criticisms could be directed, was content-based because it distinguished between favored and disfavored speech on the basis of the views expressed; Rubin v. City of Santa Monica, 823 F.Supp. 709, 713 (C.D.Cal.1993), holding that an ordinance granting greater First Amendment rights to "speakers who support `the human services objectives of the City'" (emphasis added) was impermissibly content-based. Cf. Feminist Women's Health Center v. Blythe, 32 Cal.App.4th 1641, 1662, 39 Cal. Rptr.2d 189, 199 (1995): "A restriction against activities within a given area is content neutral, as it makes no reference to the issues or viewpoints raised. [Citations.]" (Emphasis added.)

5. The Policy Is Not Narrowly Drawn to Effectuate a Compelling State Interest

Defendants contend that the policy serves three "important" and "significant" government interests: (a) the privacy interests of District's employees (Defendants' Opposition *731 at p. 17), (b) the liberty interests of District's employees (Defendants' Opposition at p. 17-18), and (c) the right of the Board "to regulate its own meeting and structure the flow of information in a manner insuring that all concerned may participate and review the information in an informed and dispassionate manner." (Defendants' Opposition, p. 20.)
Notably, with one exception, defendants do not contend that these interests are "compelling." That exception is that defendants do contend that because defamatory statements made during open sessions of Board meetings are absolutely privileged under California Civil Code section 47(b)(3), and because its employees cannot maintain defamation actions to prevent such statements being made to the Board, it has a compelling interest in prohibiting such statements during open sessions, and instead requiring complaints and charges against employees to be made in writing, apparently as part of an administrative process, or to be made to the Board in closed session. (Defendants' Supp. Opposition at pp. 9-10.)
When, as here, a regulation is content-based, the governmental interest served by the regulation must be compelling, not merely important or significant, if the regulation is to withstand constitutional scrutiny. Perry, 460 U.S. at 45-46, 103 S.Ct. at 955. It is a well-known attribute of constitutional law that balancing tests use specific terms of art to express the nature and/or weight of the interests which must be balanced against each other. Cf., e.g., Mississippi University for Women v. Hogan, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982) (constitutionality of gender-based discrimination weighs "important" governmental interests); Perry, 460 U.S. at 45-46, 103 S.Ct. at 955 (content-based exclusion requires "compelling" state interest; content-neutral time, place and manner regulations must serve "significant" government interest). Therefore, defendants' failure to assert, save for the one exception noted above, that District's interests are "compelling" is significant.
As to this one exception, whether a particular governmental interest is "compelling" is never determined in a vacuum. Instead, it is measured in a particular context against the competing private interest at stake. See, e.g., Wisconsin v. Yoder, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972) ("there [must be] a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause"); National Treasury Employees Union v. Von Raab, 489 U.S. 656, 672, 109 S.Ct. 1384, 1394, 103 L.Ed.2d 685 (1989) ("these [privacy] expectations [of certain Customs employees required to undergo drug-screening as a condition of transfer or promotion into certain types of positions] [do not] outweigh the Government's compelling interests in safety and the integrity of our borders." The circumstances of this case are such that the court concludes that District's interest in making sure that members of the public cannot complain about school district employees in a forum where their comments would be privileged does not outweigh the public's interest in being able freely to express themselves to their elected officials on all issues related to the operation of public schools without fear of being subjected to tort liability. That the public's interest outweighs District's claimed interest is made abundantly clear by these facts: (1) the California Legislature enacted specific legislation providing members of the public with a privilege to protect them from the chilling effect of the threat of litigation in such fora; (2) the Brown Act provides that the public have a right to speak in such fora, so long as such speech is within the subject matter of the school board; and (3) the California Constitution, as discussed above, prevents censorship of even defamatory speech.[12]

a. District's Employees' Right to Privacy

Even assuming for the sake of argument that District were to characterize its interest in protecting its employees' right to privacy *732 as compelling, such interest cannot be used to justify the policy for two reasons.
First, District's interest in protecting its employees' right of privacy is an interest it holds only as an employer, not as a government entity, e.g., a legislative body charged with permitting public comment at its meetings. Thus, its interest as an employer in protecting its employees' right to privacy cannot be characterized as a compelling governmental interest.[13] See Waters v. Churchill, 511 U.S. 661, ___, 114 S.Ct. 1878, 1887-1888, 128 L.Ed.2d 686 (1994) discussing difference between government's interest as a sovereign versus its mission as an employer.
Second, even if District's interest in protecting its employees' right to privacy could be characterized as a governmental interest, District's reliance on such interest presupposes that District's interest in asserting its employees' constitutional right to privacy is so compelling that it trumps the public's First Amendment right to make public comments, negative or otherwise, about such employees' behavior. This is a questionable supposition. See, e.g., Carey v. Brown, 447 U.S. 455, 466-467, 100 S.Ct. 2286, 2293, 65 L.Ed.2d 263 (1980), noting that there is a hierarchy of First Amendment values, and that "`The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system.' [Citations.]" With due respect to the District's employees' right to privacy under both the California and federal constitutions, under these circumstances such right must give way to the more fundamental constitutional right of freedom of expression under both constitutions.
Third, even if District's policy is intended to protect a compelling governmental interest, it is not narrowly drawn to effectuate such interest, and is both over-inclusive and under-inclusive as to the speech it prohibits.
The policy is over-inclusive because it forbids all complaints against District employees, even when they are not identified by name or position[14], and because it forbids all criticism of specific employees even when such criticism would not constitute an invasion of privacy. "`[A] crucial ingredient of the tort [of invasion of privacy] is a public disclosure of private facts [citations], that is, the unwarranted publication of intimate details of one's private life which are outside the realm of legitimate public interest [citation]. ... there can be no privacy with respect to a matter which is already public [citation] or which has previously become part of the public "domain" [citation]. Moreover, ... there is no liability when the [speaker] merely gives further publicity to information about the [person who is the *733 subject of discussion] which is already public or when the further publicity relates to matters which the plaintiff leaves open to the public eye [citation].' [Citation.]" Gilbert v. National Enquirer, Inc., 43 Cal.App.4th at 1149, 51 Cal.Rptr.2d at 99, supra. The policy forbids public disclosure of any criticism, regardless of whether the criticism reveals private facts about the employee, or merely expresses the speaker's opinion about the employee's performance or conduct as a public employee or involves matters which the employee has revealed in the classroom, administrative meetings, or other arenas open to public scrutiny.
The policy is under-inclusive because it does not forbid speech which does disclose intimate details of a District employee's private life but which does not do so in a critical or negative manner.
Because the policy does not forbid all speech which might invade District employees' right to privacy, and forbids other speech which would not constitute an invasion of privacy, it is clear that the policy is not narrowly drawn to effectuate District's alleged interest in protecting its employees' right to privacy.

b. District's Employees' Liberty Interest

District also contends that it has a compelling interest in protecting its employees' constitutional liberty interests, i.e., its employees' right to notice and an opportunity to be heard, although District is none too clear about what event triggers such right to notice and an opportunity to be heard in this particular case. As discussed below, the normal rule is that a public employee must be given notice and an opportunity to be heard before stigmatizing governmental action, e.g., dismissal or demotion, is taken; District's position seems to be that its employees are entitled to advance notice and an opportunity to be heard about any critical comment about an employee made by a member of the public to the Board.
Assuming for the sake of argument that District has a compelling governmental interest in protecting its employees' liberty interest, and assuming further that it can assert such interest as an employer to justify a regulation related to its legislative functions  debatable assumptions as discussed above  nonetheless its interest in protecting its employees' liberty interests cannot be used to justify a policy prohibiting speech by members of the public, because prohibiting such speech does not effectuate the desired purpose of protecting employees from a deprivation of their liberty interests.
To establish a deprivation of a protected liberty interest in the employment context, an employee must demonstrate that he or she was denied due process in connection with stigmatizing governmental action which action so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573-574, 92 S.Ct. 2701, 2707-2708, 33 L.Ed.2d 548 (1972); Cafeteria & Rest. Wkrs. U., Local 473 v. McElroy, 367 U.S. 886, 894-896, 81 S.Ct. 1743, 1748-1749, 6 L.Ed.2d 1230 (1961).
Because only the government, i.e., the employee's employer, can provide the employee with due process related to the government's threatened stigmatizing action, it follows that one who is not the employee's employer can not directly deprive the employee of due process. Gini v. Las Vegas Metropolitan Police Dept., 40 F.3d 1041, 1044 (9th Cir.1994). Such a third party can only be liable to the employee if the employee can show that the third party could reasonably foresee that the third party's statements to the governmental employer would cause the employee to be terminated without a pre-termination or name-clearing hearing. Id. Critical or even defamatory statements about the employee by third parties, in and of themselves, also cannot constitute deprivation of a constitutionally-protected liberty interest because injury to one's reputation, without more, is not enough to state a claim for loss of liberty in violation of the constitution. Siegert v. Gilley, 500 U.S. 226, 233-234, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); WMX Technologies, Inc. v. Miller, 80 F.3d 1315, 1319 (9th Cir.1996); Gini v. Las Vegas Metropolitan Police Dept., 40 F.3d at 1045, supra.
*734 Therefore, because complaints by members of the public about District employees, even if defamatory, legally cannot cause a deprivation of the employees' protected liberty interest, a policy forbidding such complaints cannot be justified by merely claiming that the complaints have such effect.

c. District's Interest in Regulating Its Own Meetings

District also contends that the policy is justified because of its interest in regulating its meetings. Indeed, a school board can ensure an orderly discussion and exchange of information by regulating the time, place, and manner for speech at its meetings, and may also require speakers to confine themselves to comments within the school board's subject matter. See footnote 9, ante. Here, the Board has done so in a portion of its policy entitled "Agenda/Meeting Materials" as recited in pages 44 through 49 of Exhibit A to Defendants' Opposition. Such regulation of conduct, e.g., by setting time limits and providing that speakers who actually disrupt a meeting may be removed, without focusing on the content of speech, is reasonable. Perry, 460 U.S. at 45-46, 103 S.Ct. at 955. But the policy here, which focuses on content and not only conduct, is not narrowly drawn so as to achieve District's purported compelling interest without impinging upon the public's First Amendment rights, which rights include the right to be passionate and even uninformed in the expression of one's views.[15]

6. The Policy Cannot Be Justified on the Ground of the Secondary Effects of the Prohibited Speech or on the Ground that "Unwilling Listeners" in the Audience Must Be Protected from Hearing Negative Comments about the District's Employees

Defendants also contend they may regulate the content of speech at Board meetings because of the prohibited speech's secondary effects, citing Aguilar v. Avis Rent-A-Car System, Inc., 45 Cal.App.4th 933, 53 Cal. Rptr.2d 599, supra. In Aguilar, the appellate court reversed an injunction enjoining a supervisory employee "`from using any derogatory racial or ethnic epithets directed at, or descriptive of, Hispanic/Latino employees of Avis....'" 45 Cal.App.4th at 937, 53 Cal.Rptr.2d at 602. Although the court concluded that the injunction was not content-based and was constitutional because it targeted "conduct amounting to employment discrimination as a `secondary effect' of such speech within the meaning of R.A.V. v. St. Paul (1992) 505 U.S. 377 [120 L.Ed.2d 305, 112 S.Ct. 2538]", and did not target the expressive content of the speech, 45 Cal. App.4th at 937, 53 Cal.Rptr.2d at 601-602, it also concluded the injunction was over-broad to the extent it attempted to enjoin conduct committed outside the workplace, and accordingly reversed and remanded the cause for modification. Id. at p. 938, 53 Cal. Rptr.2d at p. 602.
Notably, defendants never identify the conduct amounting to a secondary effect allegedly caused by the speech they seek to prohibit. For example, defendants do not contend that criticism of District employees by members of the public speaking at a Board meeting constitute employment discrimination, the secondary effect discussed in Aguilar, possibly because such comments do not involve "[f]requent or pervasive workplace use of ... slurs resulting in an abusive work environment...." 45 Cal.App.4th at 943, 53 Cal.Rptr.2d at 605, emphasis added.
Furthermore, even assuming that citizens' statements made in the open session of a Board meeting could be considered to involve "workplace use" of language, a questionable assumption at best, the policy here *735 would be overbroad  it does not simply prohibit derogatory racial, sexual, ethnic and similar slurs related to categories protected under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a)(1)) and the Fair Employment and Housing Act (Cal.Govt. Code, §§ 12900 et seq.), but instead bans all criticism, no matter how politely phrased.
District also contends that it has an important interest in controlling complaints and charges against employees during its meetings because other persons attending Board meetings are "unwilling listeners," who do not have the option of refusing to listen to the speaker's negative comments. Defendants cite Martin v. City of Struthers, 319 U.S. 141, 147-148, 63 S.Ct. 862, 865-866, 87 L.Ed. 1313 (1943) for this proposition. Martin v. City of Struthers is of no assistance to defendants. In that case, a city adopted an ordinance which made it an offense to summon the inhabitant of a home to the door when distributing handbills, advertisements, or other circulars. The Supreme Court held that the ordinance violated the First Amendment, and noted that the decision as to whether a particular householder wished to discuss the information being disseminated by door-to-door canvassers should be left to the will of the individual occupant, not usurped by the government making a decision for all its inhabitants.
Here, District's policy, to the extent it is claimed to be justified as necessary to protect "unwilling listeners" at Board meetings, suffers from a similar infirmity. District has assumed that every person at its meetings does not want to hear complaints and criticisms about District employees, just as the City of Struthers assumed that all of its inhabitants did not want to be summoned to their doors for a possible exchange of information. There is no evidentiary basis for such an assumption here, any more than in Martin v. City of Struthers.
Furthermore, the concept of protecting the "unwilling listener" is tied to residential privacy. Frisby v. Schultz, 487 U.S. 474, 484-485, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988). In locations other than their private residences, individuals are expected "simply to avoid speech they do not want to hear, [citations], ..." Id. Thus, at a Board meeting, it is up to the individual members of the audience to decide whether they want to listen to complaints and criticisms of District employees, and, if they choose not to listen, they are free to leave.

7. The Presence of Alternative Means of Communication Between Plaintiff and the Board, or Between Plaintiff and Other Members of the of Public, Does Not Justify or Validate the Otherwise Unconstitutional Policy

Defendants contend that the policy does not prohibit plaintiff from addressing the Board, and that instead they are merely regulating when and how she may do so if she wants to express complaints against District employees. They contend that she may speak to them through District's complaint resolution process, and that she may speak to them during closed sessions. They also point out that she may address the public orally or in writing without recourse to the Board meeting as a forum. Based on these alternative channels of communication, and on their further contention that the regulation is content neutral and narrowly drawn, they contend the policy passes any constitutional test.
However, the court has determined that the Board's policy is not content-neutral and that it is not narrowly drawn to accomplish even District's purported compelling interests. It therefore is irrelevant whether or not plaintiff and speakers with a similar point of view have ample alternative channels of communication. "One is not to have the exercise of [one's] liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." Schneider v. New Jersey, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939). In other words, "An otherwise invalid restriction on protected activity is not saved by the availability of other means of expression. [Citation.]" Pref. Communications v. City of Los Angeles, Cal., 754 F.2d 1396, 1410 (9th Cir.1985), cert. granted, City of Los Angeles v. Pref. Communications, 474 U.S. 979, 106 S.Ct. 380, 88 L.Ed.2d 333 (1985), jmt. aff'd and remanded, City of Los Angeles v. Pref. *736 Communications, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986), appeal after remand, Pref. Communications v. City of Los Angeles, 13 F.3d 1327 (1994), cert. denied, Pref. Communications v. City of Los Angeles, ___ U.S. ___, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); H-CHH Associates v. Citizens for Representative Government, 193 Cal.App.3d 1193, 1213, 238 Cal.Rptr. 841 (1987), cert. denied, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988) ("A regulating authority may not adopt rules which preclude the exercise of free expression in an appropriate place, even on the ground another place is available. [Citations.]"). As discussed above, the open session of a school board meeting is a legally proper place for citizens to voice their complaints about a school district's employees. The policy is an invalid restriction on speech at such meetings, and the fact that plaintiff and others critical of District employees may speak in closed sessions, in public, or even on the schoolhouse steps, does not validate the otherwise invalid policy.
Furthermore, even if this court had concluded that the policy was content-neutral or content-based but narrowly drawn to achieve some compelling governmental interest, the proffered "alternative" channels of communication are not equivalent to the forum from which District seeks to exclude plaintiff and others with views critical of District's employees.
While no single case sets out a definitive list of the specific elements to be considered in determining what constitutes the requisite "ample alternative channels of communication," Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984), the cases do indicate that such channels must be equivalent to the proscribed forum, i.e., they should (1) give the speaker the same opportunity to communicate information to the audience about the speaker's identity (because the identity of the speaker is an important component of many attempts to persuade), City of Ladue v. Gilleo, 512 U.S. 43, ___, 114 S.Ct. 2038, 2046, 129 L.Ed.2d 36 (1994), (2) be similarly inexpensive and convenient as the proscribed channel, id., (3) allow access to the same audience, and (4) be a similarly effective method for communicating the message. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 517, 101 S.Ct. 2882, 2897, 69 L.Ed.2d 800 (1981), quoting Linmark Associates, Inc. v. Willingboro, 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977).
Additionally, although the cases do not specifically so state in the context of what constitutes ample alternative channels of communication, an alternative channel of communication is not sufficiently equivalent to the proscribed forum if forcing the speaker to resort to it is more likely to have a chilling effect on speech. Lamont v. Postmaster General, 381 U.S. 301, 309, 85 S.Ct. 1493, 1497, 14 L.Ed.2d 398 (1965) (conc. opn.) ("[I]nhibition as well as prohibition against the exercise of precious First Amendment rights is a power denied to government"); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963) (First Amendment violated when state attempts to achieve the suppression of speech it deems objectionable through means other than formal sanctions); American Communications Ass'n v. Douds, 339 U.S. 382, 402, 70 S.Ct. 674, 685, 94 L.Ed. 925 (1950) (indirect discouragements are fully capable of a coercive effect on speech).
In light of the above-noted elements related to alternative channels of communication, it is apparent that the alternative channels of communication suggested by District are not equivalent to the forum provided by the open session of the Board meeting. First, although the present administrative process provided by the Board for a person who files a complaint with District against a District employee appears to provide at some point in the process an opportunity for the complainant to address the Board about such complaint in closed session, the complainant could not reach the same audience which she or he could reach in an open session of the Board, i.e., other interested members of the general public. After all, closed sessions, by their very nature, are not open to the general public as are the open sessions of school board meetings. Furthermore, requiring all speech critical of District employees to occur *737 during closed sessions not only tends to restrict the audience which the speaker may reach, but also restricts the information available to the general public, a result clearly contrary to that intended by the Brown Act.[16]
Second, although speakers have a right to speak in public or even on the sidewalk in front of the Board's meeting place, which right is unfettered by need to request permission from District or its board, any speech there, as opposed to speech in the Board meeting, is not protected by California Civil Code, section 47(b)(3), which provides that publications made in any official proceeding authorized by law are privileged.[17] Thus, comments made outside the Board meeting may subject the speaker to the threat of litigation, a threat which in turn has a chilling effect on speech. Because the traditional public fora do not provide speakers with the same protection from civil liability as is available for speech which occurs in a school board meeting, the traditional public fora are not equivalent channels of communication.
Therefore, even if the policy was not content-based, there are not ample alternative channels of communication which are the equivalent of the forum from which the speech in question is excluded.

C. There Is a Possibility of Irreparable Injury to Plaintiff If Relief Is Not Granted

As discussed above, there is more than a substantial likelihood that plaintiff will succeed on the merits of her case. That being so, plaintiff's First Amendment freedoms, as well as those of other members of the public who might wish to criticize District employees during the open session of a Board meeting, are in danger of impairment if a preliminary injunction does not issue to enjoin defendants from applying the policy to persons attending Board meetings pending a final determination on the merits. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373-374, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976); American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045, 1057-1058 (1995). The duration of a trial is an "`intolerably long' period during which to permit the continuing impairment of First Amendment rights. [Citation.]" American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d at 1058, supra.

D. The Balance of Hardships Favors Plaintiff

If a preliminary injunction does not issue, plaintiff will be deprived of her fundamental First Amendment rights until trial on the merits. In contrast, there is no indication that defendants have any legitimate compelling interest, let alone a fundamental constitutional right, which will be adversely affected if a preliminary injunction does issue. Therefore, the balance of hardships clearly favors plaintiff.

E. Issuing a Preliminary Injunction Will Advance the Public Interest

The policy affects not only plaintiff's First Amendment rights, but those of all other *738 members of the public who may wish either to speak critically of a District employee's conduct or performance, or to hear such comments made by other members of the public at a public session of a Board meeting.

F. Conclusion

Plaintiff has met all the traditional criteria for issuance of a preliminary injunction: (1) she has a strong likelihood of succeeding on the merits of this case; (2) there will be irreparable injury to plaintiff if relief is not granted; (3) the balance of hardships favors plaintiff; and (4) the public's interest will be advanced if an injunction is granted. Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d at 1200-1201, supra. Therefore, the motion is granted and the court orders that a preliminary injunction issue as follows:
IT IS ORDERED that pending hearing and determination of this cause on the merits, defendants Moreno Valley Unified School District and Frank M. West and their agents, employees and successors are hereby restrained and enjoined from applying and enforcing the policy during the open session of any Board meeting.
THE COURT HEREBY WAIVES the requirement of Federal Rules of Civil Procedure, Rule 65(c), that plaintiff give security before a preliminary injunction may issue, on the grounds that (1) the high probability of success on the merits favors exercising the court's discretion to dispense with such security, People ex rel. Van de Kamp v. Tahoe Regional Planning Agency, 766 F.2d 1319, 1326 (9th Cir.1985), (2) it appears unlikely that either defendant would incur any significant cost or damages as a result of the preliminary injunction, U.S. v. State of Or., 675 F.Supp. 1249, 1253 (D.Or.1987), and (3) to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public affected by the policy. Smith v. Board of Elections Com'rs for Chicago, 591 F.Supp. 70, 71-72 (N.D.Ill.1984).
NOTES
[1] All further statutory references will be to the California Government Code except as otherwise noted.
[2] Section 54957.9 provides: "In the event that any meeting is willfully interrupted by a group or groups of persons so as to render the orderly conduct of such meeting unfeasible and order cannot be restored by removal of the individuals who are willfully interrupting the meeting, the members of the legislative body may order the meeting room cleared and continue in session...."

Although the policy purports to allow the Board to order the meeting room cleared if a speaker persists in making critical comments by such reference to section 54957.9, the parties apparently have assumed that the consequence of engaging in proscribed speech is that the speaker alone may be removed from the room.
[3] In the court's analysis of plaintiff's constitutional challenges, it is mindful of the principle that if the California Constitution provides independent support for plaintiff's claims, there is no need for a decision on the federal constitutional issue. Carreras v. City of Anaheim, 768 F.2d 1039, 1042-1043 (9th Cir.1985).
[4] The court's conclusion therefore closes the possibility left open by the California Attorney General that a legislative body might be able to prohibit remarks "which it believes to be slanderous or which might invade an individual's personal privacy." Office of the California Attorney General, The Brown Act: Open Meetings for Local Legislative Bodies 19 (1994). (See Defendants' Supp. Opposition at p. 25.)
[5] Under the United States constitution the government may regulate speech because of its constitutionally proscribable content. However, although defamatory content is constitutionally proscribable, the government "may not make the further content discrimination of proscribing only [defamation] critical of the government," R.A.V. v. City of St. Paul, Minnesota, 505 U.S. 377, 384, 112 S.Ct. 2538, 2543, 120 L.Ed.2d 305 (1992), nor may it regulate the use of defamatory speech based on "hostility  or favoritism  towards the underlying message expressed." 505 U.S. at 386, 112 S.Ct. at 2545, supra. Here, the policy proscribes only speech critical of District employees, not speech critical of anyone else, and does not proscribe only defamatory criticism.
[6] Even if the policy proscribed only defamatory speech, it would still contain a fatal flaw. Under either the United States or California constitutions, the government may not restrain speech before there has been a judicial determination (in connection with which determination the speaker received all proper procedural safeguards) that the speech is actually harmful. Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 559, 95 S.Ct. 1239, 1246-1247, 43 L.Ed.2d 448 (1975); Adult Video Ass'n v. Barr, 960 F.2d 781, 789 (9th Cir.1992); People ex rel. Busch v. Projection Room Theater, 17 Cal.3d 42, 57, 550 P.2d 600, 130 Cal.Rptr. 328, cert. denied, 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 289 (1976). District's policy would leave the determination of what is "slanderous" or "false" up to one person  in this case, West as president of the Board  apparently without regard for such niceties as whether the statement, though critical, is true, or whether, though false, is privileged, or whether, though couched as fact (e.g., "X is a racist"), is legally an expression of opinion rather than a statement of fact and hence not actionable as slander. This is the very evil the rule against censorship and prior restraint of speech seeks to prevent. Dailey v. Superior Court, 112 Cal. 94, 98, 44 P. 458, 460, supra (Article I, section 2, subdivision (a) of the California Constitution forbids prior restraint or censorship, even by judges, because this "`subject[s] all freedom of sentiment to the prejudices of one man, and make[s] him the arbitrary and infallible judge of all controverted points in learning, religion, and government.'").

Furthermore, even courts will not grant injunctive relief against future speech save in the most exceptional and grave circumstances, e.g., to prohibit the disclosure of military secrets during time of war. Near v. Minnesota, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931); Gilbert v. National Enquirer, Inc., 43 Cal.App.4th 1135, 1145, 51 Cal.Rptr.2d 91, 97, supra. Defendants do not contend that complaints about and criticisms of public school employees, even if scurrilous and untrue, constitute the kind of exceptional and grave circumstances which might justify an injunction against speech.
[7] Public property may also be designated by the government for use as an unlimited public forum, i.e., for use by all groups and for the discussion of all subject matters. See, e.g., Clark v. Burleigh, 4 Cal.4th 474, 483 n. 8, 841 P.2d 975, 980, 14 Cal.Rptr.2d 455, 460 (1992); Cal.Ed. Code, § 40041(a).
[8] "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." § 54953.
[9] "(a) Every agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body, provided that no action shall be taken on any item not appearing on the agenda unless action is otherwise authorized by subdivision (b) of Section 54954.2....

"(b) The legislative body of a local agency may adopt reasonable regulations to ensure that the intent of subdivision (a) is carried out, including, but not limited to, regulations limiting the total amount of time allocated for public testimony on particular issues and for each individual speaker.
"(c) The legislative body of a local agency shall not prohibit public criticism of the policies, procedures, programs, or services of the agency, or of the acts or omissions of the legislative body. Nothing in this subdivision shall confer any privilege or protection for expression beyond that otherwise provided by law." § 54954.3.
[10] "As used in this chapter, `local agency' means a ... school district, ..." § 54951.

"As used in this chapter, `legislative body' means:
"(a) The governing body of a local agency....
"(b) A ... board, ... of a local agency, ..." § 54952.
[11] Although defendants concede that such sessions are limited public fora, they contend that such sessions are "highly regulated" and "similar to a non-public forum." Describing a forum as "highly regulated" begs the question of whether a particular regulation applicable to the forum is constitutional; describing a forum as "similar to a non-public forum" is irrelevant in the absence of any explanation of how the alleged similarity affects the level of constitutional scrutiny to which any regulation of speech in such forum must be subjected. Furthermore, to the extent that defendants rely on Kindt v. Santa Monica Rent Control Bd., 67 F.3d 266, 270 (9th Cir.1995) to argue that a California school board meeting is a "non-public forum," such reliance is misplaced, because the Brown Act specifically creates a public forum, albeit one limited to comments related to school boards' "subject matter."
[12] Based on the California Constitution's prohibition on censorship, the employees themselves legally could not prevent members of the public from making defamatory statements; why then should District be able to accomplish on such employees' behalf that to which they themselves have no legal right?
[13] When a school board holds open sessions of its meetings and is addressed by members of the public pursuant to the Brown Act, it is not functioning as an employer, but as a legislative body. See §§ 54952, 54952.6, 54953, 54954.3. Legislative bodies declare policy and make provisions for the ways and means of accomplishing declared policy. California Radioactive Materials Management Forum v. Dept. of Health Services (Senate Rules Committee), 15 Cal.App.4th 841, 870, 19 Cal.Rptr.2d 357, 377 (1993). In connection with adopting policies and making provisions for carrying out policies, one aspect of the legislative body's function is to listen to public testimony, including public criticism of those persons implementing the policies, i.e., school district employees. § 54954.3.

In contrast, as defendants themselves recognize, Defendants' Opposition at pp. 25-26, matters related to District's duties as an employer are considered in closed session. See, e.g., § 54956.95 (workers' compensation liability and claims considered in closed session); § 54954.5 (public employee appointment, public employment, public employee performance evaluation, public employee discipline/dismissal/release, conference with labor negotiator are all topics which may be discussed in closed session); § 54957.6 (salaries, salary schedules, and fringe benefits to be considered in closed session). These matters involve applying already determined policies to particular situations, which is an administrative or executive function. California Radioactive Materials Management Forum v. Dept. of Health Services (Senate Rules Committee), 15 Cal. App.4th at 870, 19 Cal.Rptr.2d at 377, supra.
[14] It is difficult to discern how a statement which does not identify by name or position any particular employee can violate any particular employee's right to privacy.
[15] District also tried to justify its resort to content-based regulation by claiming it has an interest in ensuring that participation and review is "informed and dispassionate." However, the policy does not prohibit "uninformed" or "passionate" speech; it prohibits only speech critical of District employees, regardless of how informed or dispassionate such speech may be. And even if the policy were directed at only passionate or uninformed speech, it would not pass constitutional muster. The First Amendment protects speech which is uninhibited, robust, wide-open, vehement, caustic, and sharp, as well as speech which lacks truth, social utility or popularity or which exaggerates or vilifies. New York Times Co. v. Sullivan, 376 U.S. 254, 270-271, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).
[16] "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

"The people of the State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (Govt.Code, § 54950, emphasis added.)
[17] See Frisk v. Merrihew, 42 Cal.App.3d 319, 323-324, 116 Cal.Rptr. 781, 783 (1974) (school board meetings are official proceedings within the meaning of California Civil Code section 47(b)(3)); see also Brody v. Montalbano, 87 Cal. App.3d 725, 731-732, 151 Cal.Rptr. 206, 211 (1978), cert. denied, 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979) (absolute privilege applies to parents' communication with school board which is intended to prompt official action by board regarding school administrator's conduct); Martin v. Kearney, 51 Cal.App.3d 309, 311, 124 Cal.Rptr. 281, 282 (1975) (absolute privilege applies to parents' communication with school board which is intended to prompt official action by board regarding school teacher's conduct).