

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-25-1996

# Presbytery of NJ v. Florio

Precedential or Non-Precedential:

Docket 95-5706

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Presbytery of NJ v. Florio" (1996). *1996 Decisions.* Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-5706


PRESBYTERY OF NEW JERSEY OF THE ORTHODOX PRESBYTERIAN
CHURCH, a New Jersey corporation; CALVARY ORTHODOX PRESBYTERIAN
CHURCH OF WILDWOOD, a New Jersey corporation;
REV. DAVID B. CUMMINGS,

Appellants

v.

CHRISTINE TODD WHITMAN,* GOVERNOR OF NEW JERSEY,
in her official capacity;
PETER VERNIERO,* ATTORNEY GENERAL OF NEW JERSEY,
in his official capacity;
MARILYN FLANZBAUM; ROMAN ANGEL; BETTY CARSON;
OLGA L.VAZQUEZ-CLOUGH; FELTON LINGO, SR.; REINHOLD W. SMYCZEK;
CASEY TAM, all in their official capacities as members
of THE DIVISION ON CIVIL RIGHTS;
C. GREGORY STEWART, in his official capacity as executive
of THE DIVISION ON CIVIL RIGHTS;
JOHN DOE(S), JANE DOE(S), addresses unknown,
the last two being fictitious names, the real names of said
defendants being presently unknown or known only in part
to plaintiffs, said fictitious names being intended
to designate organizations, persons and others acting
in concert with any of the defendants who engage in,
are engaged in, or who intend to engage in, the conduct
of defendants complained of herein, or who would have
the right to file or seek enforcement of administrative,
equitable or legal complaints or suits or to
assert any other legal claims or remedies or
enforcement thereof against the plaintiffs under
the New Jersey Law Against Discrimination,
as amended by the 1992 affectional and
sexual orientation amendments,
and all others similarly situated.


(*Parties substituted pursuant to Fed R. App. P. 43(c)(1).)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil Action No. 92-01641)


Argued June 28, 1996


Before:  BECKER, NYGAARD and LEWIS, Circuit Judges

(Opinion filed  October 25, 1996)

THOMAS S. NEUBERGER, ESQUIRE
(Argued)
Suite 702
200 West Ninth Street
Ninth Street Plaza
Wilmington, DE 19801-1646

JAMES J. KNICELY, ESQUIRE
Knicely & Cotorceanu
487 McLaws Circle
Suite 2
Williamsburg, VA 23185

Attorneys for Appellants

WILLIAM H. LORENTZ, ESQUIRE
(Argued)
CHARLES S. COHEN, ESQUIRE
Office of Attorney General
of New Jersey
124 Halsey Street
P.O. Box 45029
Newark, NJ 07102

Attorneys for State Appellees

LOUIS A. PETRONI, ESQUIRE
Montgomery, McCracken,
Walker & Rhoads
1010 Kings Highway South
Suite 2C
Cherry Hill, NJ 08034

Attorney for Religiously
Affiliated Amici-Appellees

OPINION OF THE COURT

NYGAARD, Circuit Judge.
          The Presbytery of New Jersey of the Orthodox
Presbyterian Church, Calvary Orthodox Presbyterian Church of
Wildwood, and the Reverend David B. Cummings filed suit
challenging the sexual orientation provisions of the New Jersey
Law Against Discrimination.  The district court dismissed their
facial First Amendment challenge and abstained from deciding
their "as applied" challenge.  For reasons somewhat different
from those given by the district court, we will affirm.

I.

In 1992, the New Jersey Legislature added "affectional and sexual orientation" to the list of protected classes in its Law Against Discrimination.  The amendments made it illegal to discriminate on the basis of sexual orientation in the employment relationship, in public accommodations, and in business dealings.

To appellants, the Law Against Discrimination amendments represented New Jersey's repudiation of 5,000 years of Judeo-Christian morality.  They believed that the Law Against Discrimination's provisions forbidding aiding and abetting discrimination trammeled their rights to follow the tenets of their religion in their business dealings and to preach against immorality in general and homosexuality in particular.  Accordingly, they filed this § 1983 action alleging that the 1992 amendments violated the First Amendment right of free speech, alleging that the amended Law Against Discrimination is both unconstitutionally overbroad and a content-based restriction on speech.

The facts underlying this dispute have been set forth several times by now.  See Presbytery v. Florio, 60 F.E.P. Cases (BNA) 805, 1992 WL 414680 (D.N.J.), aff'd mem., 983 F.2d 1052 (3d Cir. 1992) (Presbytery I); Presbytery v. Florio, 830 F. Supp. 241 (D.N.J. 1993), rev'd in part, 40 F.3d 1454 (3d Cir. 1994) (Presbytery II); Presbytery v. Florio, 902 F. Supp. 492 (D.N.J. 1995) (Presbytery III).  Appellants assert that the theological doctrine of the Orthodox Presbyterian Church and its members is based strictly upon Biblical teachings.  As such, appellants assert that this doctrine requires them to condemn homosexuality, both publicly and in their private lives and business dealings by speaking out against it and by avoiding those who engage in it.  The sincerity with which these beliefs are held is not disputed.

The Law Against Discrimination amendments generally exempt religious organizations from their provisions regarding hiring.  See N.J.S.A. § 10:5-12(a). Moreover, the director of the New Jersey Division on Civil Rights has stipulated that places of worship are not public accommodations within the meaning of the Law Against Discrimination and that Reverend Cummings would therefore not be subject to liability for discriminatory acts he might commit in his capacity as a pastor.  Nevertheless, Cummings points to several provisions of the Law Against Discrimination which he believes could subject him and other religionists to suit in their capacities as private citizens: (1) N.J.S.A. § 10:5-12(e), which bans aiding and abetting, inciting, compelling or coercing another to perform a discriminatory act; (2) N.J.S.A. § 10:5-12(n), which generally forbids aiding and abetting a boycott; (3) N.J.S.A. § 10:5-12(j), which requires the posting of notices of nondiscrimination; and, (4) to the extent incorporated by the two aiding and abetting provisions, § 10:5-12(c) (proscribing employer from printing or circulating discriminatory statements), § 10:5-12(f) (in public accommodations), § 10:5-12(l) (prohibiting refusal to do business); § 10:5-12(h) (prohibiting requirement of boycott as condition of doing business).  For example, appellants assert that if a person, following the tenets of his or her religion, circulated tracts condemning homosexuality and exhorting employers to discharge

such persons, and if an employer read one of those tracts and acted upon it, the person who caused the tract to be printed could be held liable as an aider and abettor.

The district court first held that, while the challenges to the aiding and abetting prohibitions were ripe for review, the notice posting challenge was not. 902 F. Supp. at 503-09. Then, after determining that Reverend Cummings had both individual and third party standing, it proceeded to consider whether it should abstain from reaching the merits under the Pullman abstention doctrine. The court held that, to the extent appellants were asserting a valid facial challenge to the Law Against Discrimination, abstention would be improper, but it concluded ultimately that the Law Against Discrimination was not facially unconstitutional. Id. at 516-23. It then abstained as to the "as applied" challenge, but retained jurisdiction. Id. at 523.

## II.

The district court first considered whether appellants' facial challenge to the amended Law Against Discrimination was meritorious. It viewed this challenge as having two principal arguments: first, that the statute is unconstitutionally overbroad; and second, that it is an unconstitutional content-based, viewpoint-discriminatory restriction on speech. 902 F. Supp. at 516. It rejected the facial challenge because it believed that the Law Against Discrimination provisions at issue were capable of some constitutional application and because appellants had not demonstrated that the challenged provisions are overbroad. Id. at 516-17. The district court rejected the viewpoint discrimination challenge under the "secondary effects" doctrine set forth in Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S. Ct. 925 (1986), opining that, because the Law Against Discrimination provisions were not targeted at speech condemning homosexuality but rather the effects of discriminatory conduct, they passed constitutional muster because they were rational and served the substantial government interest of ending discrimination. Id. at 517-22.

## A.

For the most part, we agree with the district court's analysis of appellants' facial challenge. In City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118 (1984), the Supreme Court discussed facial invalidity under the First Amendment. First, it noted that a statute may be declared facially invalid if it is "apparent that any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas." Id. at 797, 104 S. Ct. at 2124 (emphasis added). That is plainly not the case here. As the district court aptly noted under the aid and abet provision,

> the State could permissibly prohibit, for example, an
> individual from offering a $500 reward to employers for
> each time that they refuse to hire a gay or lesbian job
> applicant because of the applicant's sexual
> orientation. Such a reward scheme would have little to
> do with the expression of ideas and could legitimately

be regulated by the state[.]

902 F. Supp. at 517.  Likewise, a person who threatened a business if it refused to fire its gay employees could certainly be held liable as a "coercer" under the Law Against Discrimination without offending the Speech Clause.

Appellants argue that this statute is indeed incapable of any constitutional application, relying on Dambrot v. Central Mich. Univ., 55 F.3d 1177 (6th Cir. 1995), and Doe v. University of Mich., 721 F. Supp. 852 (E.D. Mich. 1989).  Those cases, however, are inapposite.  Both involved university "hate speech codes" that explicitly purported to regulate speech and other protected First Amendment activity.  Because protected activity was the target of these regulations, they had no constitutional application and were thus facially invalid.

Nor are we persuaded that City of Houston v. Hill, 482 U.S. 451, 107 S. Ct. 2502 (1987), militates towards finding the Law Against Discrimination facially unconstitutional.  In that case, a municipal ordinance made it "unlawful for any person to assault, strike, or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty," and the Supreme Court declared the statute unconstitutional on its face. Id. at 467, 107 S. Ct. at 2512.  Appellants point to the unprotected conduct proscribed in that statute and argue that the fact that unprotected conduct is likewise regulated by the Law Against Discrimination cannot therefore foreclose a facial challenge to that statute.  A careful reading of Hill, however, discloses that all of the prohibited conduct in that ordinance was preempted by the state criminal code, leaving only the speech restrictions intact as a matter of state law.  That being the case, there were no constitutional applications of the ordinance and the Supreme Court invalidated it on facial grounds.  Here, the "conduct" restrictions are an integral part of New Jersey law and have been enforced for most of the last half-century. Accordingly, Hill is not dispositive.

Second, the Vincent court discussed overbreadth, the other way in which a statute might be found facially invalid:

    [T]he very existence of some broadly written statutes
    may have such a deterrent effect on free expression
    that they should be subject to challenge even by a
    party whose own conduct may be unprotected.  The Court
    has repeatedly held that such a statute may be
    challenged on its face even though a more narrowly
    drawn statute would be valid as applied to the party in
    the case before it.  This exception from the general
    rule is predicated on a judicial prediction or
    assumption that the statute's very existence may cause
    others not before the court to refrain from
    constitutionally protected speech or expression.

Id. at 798-99, 104 S. Ct. at 2125 (internal citation and quotation marks omitted).  Thus, the overbreadth doctrine permits a litigant whose own activities are unprotected to challenge the statute by claiming that is infringes the rights of others not

before the court. In this case, however, appellants make no argument that, while their own activities may be unprotected, the protected activities of third parties not before the court might be drawn within the ambit of the Law Against Discrimination. Rather, it appears that appellants' activities are no different from those of any other person who might assert a First Amendment challenge to the statute. That is fatal to appellants' claim that the Law Against Discrimination is unconstitutionally overbroad. Id. at 801–02, 104 S. Ct. at 2127 (overbreadth challenge inappropriate where it appeared that, if ordinance could be validly applied to plaintiffs, it could be validly applied to anybody). Accordingly, we agree with the district court that appellants have not presented a valid facial challenge to the Law Against Discrimination.

B.

That leaves appellants with an "as applied" challenge to the Law Against Discrimination, specifically appellants' argument that the Law Against Discrimination is an impermissible content–based restriction on speech. The district court apparently believed that this argument was part of appellants' facial challenge to the statute, since it engaged in a detailed legal analysis of the issue in that section of its opinion. See 902 F. Supp. at 517–22.

That analysis, however, was unnecessary, and consequently we express no view as to its correctness. Once the district court determined that the challenged Law Against Discrimination provisions were capable of some constitutional application and that they are not properly the subject of an overbreadth challenge, there was no remaining issue of facial invalidity to be decided. Rather, whether the Law Against Discrimination was an unconstitutional content–based restraint on speech could only be determined within the context of its application to appellants. Thus, if the district court correctly abstained from deciding appellants' as applied challenge, its discussion of viewpoint discrimination and the secondary effects doctrine was unnecessary.

C.

We believe that the district court correctly applied Pullman abstention. Pullman abstention may be employed "when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question, . . . [thus] avoid[ing] 'needless friction with state policies.'" Chez Sez III Corp. v. Township of Union, 945 F.2d 628, 631 (3d Cir. 1991) (quoting Railroad Comm'n v. Pullman, 312 U.S. 496, 500, 61 S. Ct. 643, 645 (1941)). As a matter of law, Pullman abstention requires the following special circumstances: (1) uncertain issues of state law underlying the federal constitutional claim; (2) state law issues subject to state court interpretation that could obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim; and (3) an erroneous construction of state law by the federal court would disrupt important state policies. Chez Sez, 945 F.2d at 631; accord Hughes v. Lipscher, 906 F.2d 961, 964 (3d Cir. 1990). If these

special circumstances are all present, the court should make a "discretionary determination" as to whether abstention is appropriate under the circumstances, based on certain "equitable considerations." Chez Sez, 945 F.2d at 631. We find, as did the district court, that all three requirements are met here and that abstention is appropriate under these circumstances.

First, it is clear that the state law issues are uncertain. Although there is some evidence that New Jersey would interpret this language in the Law Against Discrimination in the same manner as it does in the criminal law context, see Baliko v. Stecker, 645 A.2d 1218, 1223 (N.J. Super. Ct. 1994), the New Jersey Supreme Court has interpreted the language "aid, abet, incite, compel or coerce" only once in the context of a First Amendment challenge, and that case involved commercial speech. See Passaic Daily News v. Blair, 308 A.2d 649 (N.J. 1973), in which the supreme court held that providing sex-segregated classified advertising columns aided employers' acts of sex discrimination. In sum, we simply do not know how the courts of New Jersey would interpret the "aid and abet" language.

Second, it is quite possible that the New Jersey courts would construe the challenged language so as to avoid reaching the type of conduct in which Reverend Cummings and others similarly situated engage. Indeed, the state agency responsible for the statute's enforcement has stipulated that the Law Against Discrimination should not be construed to reach speech protected under the First Amendment. Should the New Jersey courts agree (and it indeed appears that the agency's views would be entitled to considerable weight, see Blair, 308 A.2d at 654), it is likely that appellants' First Amendment claim would be substantially narrowed, if not eliminated entirely.

Third, the potential for disruption of important state policies is manifest. For many decades, the Law Against Discrimination has been a powerful tool in New Jersey's war against discrimination. Were we to erroneously construe it to reach appellants' conduct and then find it violative of the First Amendment, we could eviscerate the entire aiding and abetting prohibitions, not only for sexual orientation, but for race, gender and creed as well. See N.J.S.A. § 10:5-12(a).

Thus, we conclude that the district court had the power to abstain under the Pullman doctrine. Turning to the equitable factors, we also conclude that its application of Pullmanabstention was a proper exercise of its discretion. Although abstention should generally not be applied to facial challenges, there is no such restriction with respect to an "as applied" challenge because there is less of a concern that protected activity will be inhibited if the court abstains from deciding the First Amendment issues. Chez Sez, 945 F.2d at 633-34.

Appellants point to the additional delay which they will suffer if they are forced to adjudicate their state law issues in the New Jersey courts, relying on Stretton v. Disciplinary Bd., 944 F.2d 137, 140 (3d Cir. 1991), and Biegenwald v. Fauver, 882 F.2d 748, 750-51 (3rd Cir. 1989). Stretton, however, involved an imminent judicial election and the plaintiff in Biegenwald was under sentence of death. In both cases, abstention threatened

any possibility of relief.  The situation here is simply not that extreme.

Moreover, New Jersey law provides for declaratory relief when a person is unsure of the application of a statute.  SeeN.J.S.A. § 2A:15-53.  Thus, appellants had and continue to have the statutory opportunity to obtain a definitive construction of the Law Against Discrimination provisions at issue from the New Jersey courts.  Thus, any delay is at least partly of appellants' own making, as they plainly possessed the right to seek a declaratory judgment in state court from the outset of this litigation and should have realized that federal court abstention was at least a possibility.

III.

Because appellants have not presented a valid facial challenge to the Law Against Discrimination and because the district court abstained properly from their "as applied" challenge, we will affirm.